**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 14-5119**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**ELOUISE PEPION COBELL**, *et al.*,
**Plaintiffs-Appellants,**

**SALLY JEWELL, Secretary of the Interior**, *et al.*,
**Defendants-Appellees.**

**Appeal from the United States District Court for the District of Columbia
No. 1:96-CV-1285, the Honorable Thomas F. Hogan, District Judge**

**PLAINTIFFS-APPELLANTS' OPENING BRIEF**

**David C. Smith**
**KILPATRICK TOWNSEND &
    STOCKTON LLP**
**Suite 900**
**607 14th Street, N.W**
**Washington, D.C. 20005**
**(202) 508-5844**

**William E. Dorris**
**KILPATRICK TOWNSEND &
    STOCKTON LLP**
**1100 Peachtree Street**
**Suite 2800**
**Atlanta, Georgia 30309**
**(404) 815-6500**

**Adam H. Charnes**
**Elizabeth L. Winters**
**KILPATRICK TOWNSEND &
    STOCKTON LLP**
**1001 W. Fourth Street**
**Winston-Salem, North Carolina 27101**
**(336) 607-7300**

*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Undersigned counsel certifies the following:

**A.    Parties**

Elouise Cobell, James Louis LaRose, Thomas Maulson, and Penny Cleghorn were the named representatives in a class action litigation that was resolved through federal legislation enacted in 2010.  *See Cobell v. Salazar*, 679 F.3d 909, 915 (D.C. Cir. 2012) (providing background).  Ms. Cobell passed away on October 16, 2011, and no one has been substituted for her as plaintiff.  Defendants-Appellees are Sally Jewell, as Secretary of the Interior; Kevin K. Washburn, as Assistant Secretary of the Interior–Indian Affairs; and Jacob J. Lew, as Secretary of the Treasury, all named in their official capacities.  There were no district court *amici* with respect to the issue presented on this appeal.

**B.    Rulings Under Review**

This appeal challenges that portion of the Order Granting Final Approval to Settlement, J.A. 1790, entered July 27, 2011, denying the Class Representatives' Expense Application, and the Order denying Plaintiffs' Motion for Reconsideration of Class Representatives' Expense Application, J.A. 1843, entered March 20, 2014.  Senior Judge Thomas F. Hogan issued both rulings.

**C.    Related Cases**

This case has been before this Court in the following matters:

- Nos. 00-5081 and 5084, *Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001);

- No. 02-5374, *Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003);

- Nos. 03-5262 and 04-5084*, Cobell v. Norton*, 391 F.3d 251 (D.C. Cir. 2004);

- Nos. 03-5047, 5048, 5049, 5050 and 03-5057, *In Re Brooks*, 383 F.3d 1036 (D.C. Cir. 2004);

- No. 03-5314, *Cobell v. Norton*, 392 F.3d 461 (D.C. Cir. 2004);

- No. 05-5068, *Cobell v. Norton*, 428 F.3d 1070 (D.C. Cir. 2005);

- No. 03-5288, *In re Kempthorne*, 449 F.3d 1265 (D.C. Cir. 2006);

- No. 05-5388, *Cobell v. Kempthorne*, 455 F.3d 301 (D.C. Cir. 2006);

- No. 05-5269, *Cobell v. Kempthorne*, 455 F.3d 317 (D.C. Cir 2006);

- Nos. 08-550, 08-5506, *Cobell v. Salazar*, 573 F.3d 808 (D.C. Cir. 2009);

- No. 11-5229, *Cobell v. Salazar*, (D.C. Cir. 2011) (unpublished);

- No. 11-5158, *Cobell v. Salazar*, (D.C. Cir. 2011) (unpublished);

- No. 11-5205, *Cobell v. Salazar*, 679 F.3d 909 (D.C. Cir. 2012);

- No. 11-5270, *Cobell v. Salazar*, (D.C. Cir. 2012) (unpublished);

- No. 12-5346, *Cobell v. Jewell*, (D.C. Cir. 2013) (unpublished).

The pending dispute in *Lannan Found. v. Gingold,* No. 13–cv–01090 (TFH) (D.D.C.), is related to the present appeal. *See Cobell v. Jewell*, --- F. Supp. 2d. ---, 2014 WL 1064038, at *4-5 & n.4 (D.D.C. Mar. 14, 2014) (noting the *Lannan Found.* suit).

**<u>TABLE OF CONTENTS</u>**

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND
RELATED CASES ...................................................................... i

TABLE OF AUTHORITIES ...................................................... v

GLOSSARY ............................................................................ viii

INTRODUCTION ...................................................................... 1

JURISDICTIONAL STATEMENT ............................................ 3

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ..... 3

STATUTES AND REGULATIONS ............................................ 3

STATEMENT OF THE CASE .................................................... 4

    1.   Costs and Expenses Incurred by the Class
        Representatives ...................................................... 4

    2.   The Settlement Agreement and Agreement on
        Attorneys' Fees, Expenses, and Costs .................... 7

    3.   The Class Representatives' Petition for Incentive
        Awards and Expenses ............................................. 9

    4.   Plaintiffs' Motion for Reconsideration. ................. 12

SUMMARY OF THE ARGUMENT ......................................... 14

ARGUMENT ........................................................................... 15

    I.   THE DISTRICT COURT IMPROPERLY
       ANALYZED PLAINTIFFS' MOTION UNDER
       FEDERAL RULES OF CIVIL PROCEDURE
       59(e), AND ITS FINDINGS DO NOT SUPPORT
       DENIAL UNDER THE PROPER STANDARD. ........... 15

A.   The District Court Applied the Wrong
     Standard to Plaintiffs' Motion for
     Reconsideration........................................................16

B.   The District Court's Findings Do Not
     Support Denial Under the Proper Standard. ...........................19

II.   THE DISTRICT COURT ERRED IN FINDING
      THAT PLAINTIFFS RAISED NEW
      ARGUMENTS IN THEIR MOTION FOR
      RECONSIDERATION. ...................................................21

III.  THE DISTRICT COURT ERRED IN FINDING
      THAT IT LACKED AUTHORITY TO AWARD
      EXPENSES PAID BY THIRD PARTIES........................................23

A.   The Settlement Agreement Allows
     Reimbursement of the Class
     Representatives' Expenses Sought in Their
     Petition. ...............................................................23

B.   Controlling Law Does Not Require That the
     Class Representatives Personally Incurred
     the Costs and Expenses.............................................26

IV.   MS. COBELL PERSONALLY INCURRED
      SOME EXPENSES SOUGHT IN THE
      PETITION. ...........................................................288

CONCLUSION .....................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES[1]

**Cases**

*American Canoe Ass'n, Inc. v. Murphy Farms, Inc.*,
  326 F.3d 505 (4th Cir. 2003) ........................................................17

*Aspen v. Bayless*,
  564 So.2d 1081 (Fla. 1990) .........................................................26

*Brayton v. Office of the U.S. Trade Representative*,
  641 F.3d 521 (D.C. Cir. 2011).....................................................19

*Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*,
  630 F.3d 217 (D.C. Cir. 2011).....................................................16

*Cobell v. Jewell*,
  --- F. Supp. 2d. ---, 2014 WL 1064038 (D.D.C. Mar. 14, 2014) .................. ii

*Cobell v. Kempthorne*,
  455 F.3d 317 (D.C. Cir. 2006)........................................................2

*Cobell v. Kempthorne*,
   532 F. Supp. 2d 37 (D.D.C. 2008)...............................................1

*Cobell v. Norton*,
  224 F.R.D. 266 (D.D.C. 2004) .....................................................17

*Cobell v. Norton*,
  240 F.3d 1081 (D.C. Cir. 2001)....................................................1

*\*Cobell v. Norton*,
  355 F. Supp. 2d 531 ...................................................... 17, 18, 20

*Cobell v. Salazar*,
  679 F.3d 909 (D.C. Cir. 2012)...................................................... i

*Cobell v. Salazar*, 573 F.3d 808 (D.C. Cir. 2009) ....................................1

---

[1] Authorities upon which Appellants chiefly rely are marked with asterisks.

*Compagnie des Bauxites de Guinee v. Hammermills, Inc.*,
  No. 90-0169 (JGP), 1992 WL 122712 (D.D.C. May 29, 1992)...................27

*Friedman v. Typhoon Air Conditioning Co.*,
  31 F.R.D. 287 (E.D.N.Y. 1962)...................................................19

*GSS Grp. Ltd. v. Nat'l Port Auth.*,
  680 F.3d 805 (D.C. Cir. 2012)...................................................18

*Guarrasi v. Gibbons*,
  No. 07-5475, 2011 WL 382598 (E.D. Pa. Feb. 3, 2011)..............................28

*Hill v. Republic of Iraq*,
  328 F.3d 680 (D.C. Cir. 2003)...................................................19

*Johnson-Parks v. D.C. Chartered Health Plan*,
  806 F. Supp. 2d 267 (D.D.C. 2011)...............................................18

*Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*,
  No. 3:06-CV-812-L(BH), 2012 WL 1835759 (N.D. Tex. Apr.
  30, 2012) ......................................................................28

*King v. Gowdy*,
  No. 02-CV-75136-DT, 2008 WL 1820837 (E.D. Mich. Apr. 22,
  2008) ..........................................................................26

*Lannan Found. v. Gingold*,
  No. 13–cv–01090 (TFH) (D.D.C.) .................................................. ii

*Linder v. Dep't of Defense*,
  133 F.3d 17 (D.C. Cir. 1998).....................................................23

*Manor Healthcare Corp. v. Lomelo*,
  929 F.2d 633 (11th Cir. 1991) ..................................................26

*Minority Emps. at NASA (MEAN) v. Beggs*,
  723 F.2d 958 (D.C. Cir. 1983)...................................................24

*Moore v. Mercier*,
  242 F.3d 376 (8th Cir. 2000) ...................................................27

*Muwekma Tribe v. Babbitt*,
  133 F. Supp. 2d 42 (D.D.C. 2001)................................................18

- vi -

*Nix v. Billington*,
　　448 F.3d 411 (D.C. Cir. 2006)..................................................................24

*North v. United States Dep't of Justice*,
　　810 F. Supp. 2d 205 (D.D.C. 2011)............................................18

*S.E.C. v. Loving Spirit Found. Inc.*,
　　392 F.3d 486 (D.C. Cir. 2004)..................................................................24

*Saint Annes Dev. Co., Inc. v. Trabich*,
　　443 F. App'x 829 (4th Cir. 2011)...............................................21

*Seminole Nation v. United States*,
　　316 U.S. 286 (1947)...........................................................................1

*Williams v. Savage*,
　　569 F. Supp. 2d 99 (D.D.C. 2008)..............................................18

*Yousuf v. Samantar*,
　　451 F.3d 248 (D.C. Cir. 2006)..................................................................26

**Statutes**

Claims Resolution Act of 2010, Pub. L. No. 111-291, 124 Stat. 3064
　　(2010)......................................................................... 3, 7, 27

General Allotment Act of 1887, ch. 119, 24 Stat 388 (1887) ...................................1

**Rules**

*Fed. R. Civ. P. 54(b) ................................................................. 14, 16, 17, 18, 20

*Fed. R. Civ. P. 54(d)(1).................................................................. 26, 28

*Fed. R. Civ. P. 59(e)............................................ 12, 13, 14, 15, 16, 17, 18, 19, 21

**Other Authorities**

COMM'N ON GOV'T OPERATIONS, MISPLACED TRUST: THE BUREAU OF
　　INDIAN AFFAIRS' MISMANAGEMENT OF THE INDIAN TRUST
　　FUND, H.R. REP. NO. 102-499 (1992) ............................................................1

# **GLOSSARY**

J.A.        Joint Appendix

# INTRODUCTION

In the late nineteenth century, the federal government adopted a policy of assimilation toward Indians. To further that policy it seized tribal lands, allotting portions to individual Indians and allocating the balance to non-Indian ownership. *Cobell v. Norton*, 240 F.3d 1081, 1087 (D.C. Cir. 2001); General Allotment Act of 1887, ch. 119, 24 Stat 388 (1887).  The United States retained legal title to the allotted lands as trustee, exercising complete control over those lands and their resources. *Cobell VI*, 240 F.3d at 1087.  In doing so it "charged itself with moral obligations of the highest responsibility and trust."  *Seminole Nation v. United States*, 316 U.S. 286, 297 (1947).

Despite the federal government's fiduciary obligations, as recognized by Congress and this Court, its management of the individual Indian Trust was replete with the loss, theft, waste, dissipation and withholding of trust assets.  *Cobell VI*, 240 F.3d at 1089; COMM'N ON GOV'T OPERATIONS, MISPLACED TRUST: THE BUREAU OF INDIAN AFFAIRS' MISMANAGEMENT OF THE INDIAN TRUST FUND, H.R. REP. NO. 102-499 (1992). Moreover, the full scope of that mismanagement remained hidden as no accounting of the trust had ever been performed over the course of its over 100 year history.  *Cobell v. Kempthorne*, 532 F. Supp. 2d 37, 43 (D.D.C. 2008), *rev'd on other grounds*, *Cobell v. Salazar*, 573 F.3d 808 (D.C. Cir. 2009).  Indeed, as characterized by this Court, the government's mishandling of the

Trust was "a serious injustice that has persisted for over a century and that cries out for redress." *Cobell v. Kempthorne,* 455 F.3d 317, 335 (D.C. Cir. 2006).

But for the tireless efforts of the Class Representatives, in particular those of the late Elouise Cobell, that injustice would never have been redressed. Her work culminated in the landmark settlement of this litigation, the largest class action settlement against the federal government and the largest ever on behalf of tribes or individual Indians. As Judge Hogan noted in approving the settlement, Ms. Cobell, through this litigation, "accomplished more for … Native Americans than any other person recently that I can think of in history." *Id.* But this relief came at a cost. As explained by Judge Hogan, Ms. Cobell spent over 15 years and "hundreds and thousands of hours" working on the case, "helped fund raise," and paid "hundreds of thousands of dollars out of her own pocket to make sure that the case could continue when there was no money." J.A. 1760, at 239-40.

The costs and expenses incurred by Ms. Cobell, the other Class Representatives, and third parties on their behalf can—and should—be reimbursed out of the common fund. Otherwise, this type of life-changing (but costly) litigation will never again be possible because plaintiffs and non-profit organizations will be unwilling to risk their money to further such litigation. This Court should therefore vacate the district court's decisions denying reimbursement of these expenses.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1361, and under § 101(d) of the Claims Resolution Act of 2010, Pub. L. No. 111-291, 124 Stat. 3064 (2010).  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because it was timely filed from a final order of the district court. The district court entered an order denying Plaintiffs' Motion for Reconsideration of Class Representatives' Expense Application on March 20, 2014.  Plaintiffs filed their notice of appeal on May 16, 2014.  Plaintiffs' notice of appeal was timely under Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure because Defendants include officers or employees of the United States sued in their official capacities.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

1.      Whether the trial court erred by denying the Class Representatives' Expense Application and Plaintiffs' Motion for Reconsideration of the Class Representatives' Expense Application.

## STATUTES AND REGULATIONS

Title I of the Claims Resolution Act of 2010, Pub. L. No. 111-291, 124 Stat. 3064 (2010), and Rules 54 and 59 of the Federal Rules of Civil Procedure are included in the Addendum.

## STATEMENT OF THE CASE

### 1.   COSTS AND EXPENSES INCURRED BY THE CLASS REPRESENTATIVES.

In order to fund this extremely expensive and protracted litigation, Ms.

Cobell and the other Class Representatives were forced to borrow funds from any

and all available sources.  Many of these funds were in the form of loans or grants

made to the Blackfeet Reservation Development Fund ("Blackfeet Development"),

a non-profit organization created by Ms. Cobell for the sole purpose of funding this

litigation.  These funds were provided to Blackfeet Development, rather than to

Ms. Cobell personally, because some sources provide grants and loans only to

charitable organizations, not to individual applicants.  *See* J.A. 807 ¶ 1, 1802 ¶ 5

(declaration explaining that loan could only be made to a tax-exempt organization

and not an individual such as Ms. Cobell); J.A. 1811-12 ¶ 10 (affidavit providing

reasons why funds were provided to Blackfeet Development and not Ms. Cobell

individually).  Plaintiffs presently seek reimbursement of three categories of

expenses incurred in this litigation, totaling $8,571,748.63.

First, Ms. Cobell used nearly all of her $300,000 McArthur Foundation

"Genius" grant award to fund the litigation.  J.A. 801 ¶ 20.  Ms. Cobell also spent

another approximately $90,000 out of her own pocket to cover travel and other

litigation-related costs.  *Id*.

Second, Plaintiffs seek reimbursement for seven loans, totaling $4,540,622.72,[2] made by the Lannan Foundation to Blackfeet Development to fund this litigation.  J.A. 1550, 1697-98 ¶¶ 3-7.  These loans were primarily used to fund the cost of experts from PricewaterhouseCoopers; the terms of the grant expressly prohibited their use to pay attorneys' fees.  J.A. 1550 ¶ A (Grant Agreement describing the purpose of a grant for $2 million); J.A. 1555 ("Foundation funds are not to be used for attorney fees related to litigation.").  The Class Representatives have assigned to Blackfeet Development any recovery they obtain related to fees, costs, or expenses in order to repay these loans:

> By separate assignments to [Blackfeet Development], Elouise Pepion Cobell, Earl Old Person, Thomas Maulson, and James Louis Larose … have agreed to pay to the Blackfeet Reservation Development Fund all amounts that any or all of them recover from the United States (including any agency or department thereof) related to attorney's fees and/or costs and/or expenses of the Litigation.

J.A. 1698 ¶ 4; *see, e.g.*, J.A. 1554 (assignment agreement signed by Ms. Cobell).

Third, Blackfeet Development has outstanding obligations totaling $3,641,125.91 to various entities for litigation-related services.  J.A. 1689 (listing amounts owed by Blackfeet Development); J.A. 1796-98 (correcting amount owed by Blackfeet Development).  $500,000 of this amount is an additional grant from

---

[2] The loans initially totaled $6,425,000.00, but $1,884,377.28 was repaid from funds awarded by the district court pursuant to its Equal Access to Justice Act interim fee order in 2005.

the Lannan Foundation for which the Class Representatives have not executed an

assignment to Blackfeet Development of costs awarded in the litigation.  J.A. 1698

¶¶ 6-7.  Blackfeet Development also owes $600,000 to the Otto Bremer

Foundation to repay a grant provided to help finance the litigation.  J.A. 809 ¶ 7

(Affidavit of Ms. Cobell, describing repayable grant from Otto Bremer

Foundation); J.A. 1698 ¶¶ 8-9 (Affidavit of Geoffrey Rempel, describing the loan

from the Otto Bremer Foundation).  $1,210,598.00 is owed to

PricewaterhouseCoopers for expert accounting services.  J.A. 1032-42 (Affidavit

of Jessica Pollner, principal in PricewaterhouseCoopers).  Approximately

$704,134.91 is owed to Charles River Associates International, Inc., which

provided extensive litigation services including preparing documents, testimony,

analyses, and models.  J.A. 919-22 ¶¶ 2, 4-7 (Affidavit from Vice President of

Charles River Associates describing work performed for Blackfeet Development).

Blackfeet Development also owes $130,000 to RSH Consulting LLC for its

coordination of settlement discussions with the U.S. government and obtaining

congressional approval for the parties' settlement.  *See* J.A. 1366-69 (Affidavit of

Robert Holmes, President of RSH Consulting).  Finally, Blackfeet Development

must repay a $496,393.00 loan from the Indian Land Tenure Foundation, which

funds were primarily used to pay costs related to the 2007 trial in this matter,

including expert and professional consultant fees and the travel costs for certain fact witnesses.  J.A. 1802 ¶ 6, 810-11.

These amounts are still outstanding and must be repaid by Blackfeet Development.  However, unlike the loans from the Lannan Foundation discussed in the previous paragraph, the Class Representatives have not signed any assignment to Blackfeet Development of costs awarded in the litigation for these expenses.

**2.      THE SETTLEMENT AGREEMENT AND AGREEMENT ON ATTORNEYS' FEES, EXPENSES, AND COSTS.**

After more than thirteen years of litigation and five months of intensive negotiations, the parties executed a Class Action Settlement Agreement ("Settlement Agreement"), J.A. 520-608, and a separate Agreement on Attorneys' Fees, Expenses, and Costs ("Fee Agreement"), J.A. 1433-37, on December 7, 2009.  *See* J.A. 1782-85 (providing a summary of the background of the case). Congress passed legislation approving and ratifying the Settlement Agreement as part of the Claims Resolution Act of 2010, signed into law on December 8, 2010. *See* J.A. 609-709.  The district court granted preliminary approval of the Settlement Agreement on December 21, 2010, and, after a fairness hearing on June 20, 2011, granted final approval on June 27, 2011.  J.A. 741-44, 1782-94.

The parties included a number of provisions regarding the recovery of attorneys' fees, expenses, and costs as part of their settlement.  These provisions

- 7 -

separate Plaintiffs' requests for fees, expenses, and costs incurred by Class Counsel from those incurred by the Class Representatives, and further separate the requests for pre-settlement expenses from those for post-settlement expenses. This structure, established and agreed upon by the parties, is reflected in both the Settlement Agreement and the Fee Agreement.

The Settlement Agreement provides first for the recovery of attorneys' fees, expenses, and costs incurred by Class Counsel, which is governed by Paragraph J. J.A. 568. Paragraph J.1 requires Plaintiffs to file a notice with the court, prior to the hearing on the parties' Motion for Preliminary Approval of the Settlement Agreement, stating the amount of attorneys' fees, expenses and costs they plan to request through the date of the Settlement Agreement. *Id.* Plaintiffs must then file their petition for fees, expenses, and costs incurred by Class Counsel through the date of the Settlement Agreement in accordance with Paragraph J.2. J.A. 568-69. The request for fees, expenses, and costs incurred by Class Counsel subsequent to the date of settlement is governed by Paragraph J.4. J.A. 569. The Fee Agreement mirrors this structure, separating Plaintiffs' request for attorneys' fees, expenses and costs incurred through the date of settlement, and their request for fees, expenses, and costs incurred subsequent to that date. J.A. 1434-36 ¶¶ 4.a, 5. The Fee Agreement also prohibits Plaintiffs from requesting more than $99.9 million in pre-settlement fees. J.A. 1434-35 ¶ 4.a.

Plaintiffs' request for costs and expenses incurred by the Class Representatives is separately provided for in Paragraph K of the Settlement Agreement, and allows Plaintiffs to request incentive payments for each Class Representative as well as recovery of "expenses and costs that were not paid for by attorneys." J.A. 570 ¶ K.1. The parties estimated that these expenses and costs—separate from those paid by counsel—would be in the range of $15 million above the amount already paid by Defendants. *Id.* Like the requests for expenses incurred by Class Counsel, the Settlement Agreement requires separate petitions for reimbursement of pre-settlement and post-settlement expenses and costs. J.A. 570-71 ¶¶ K.2 and K.4 ("Post-Agreement Expenses and Costs of Class Representatives"). And, also like the request for expenses incurred by Class Counsel, Plaintiffs were required to file a notice stating the amount of incentive awards and "expenses and costs" requested by the Class Representatives prior to the preliminary approval hearing. J.A. 570 ¶ K.1. The Fee Agreement does not discuss the fees, expenses, and costs incurred by Class Representatives, but does require that it "be interpreted in a manner consistent with the [Settlement Agreement]." J.A. 1434 ¶ 1.

### 3.   THE CLASS REPRESENTATIVES' PETITION FOR INCENTIVE AWARDS AND EXPENSES.

In compliance with Paragraphs J.1 and K.1 of the Settlement Agreement, Plaintiffs filed a Notice Regarding Attorneys' Fees and Class Representatives'

Incentive Awards on December 10, 2010.  The Notice estimated the amount of attorneys' fees, expenses, and costs Plaintiffs anticipated requesting for Class Counsel, and the amount of incentive awards for each Class Representative and expenses and costs that Plaintiffs would seek.  J.A. 721.  The Notice explained that, although Class Counsel believed they were entitled to approximately $223 million in fees pursuant to a contingency fee agreement with Plaintiffs, Plaintiffs would request only $99.9 million in attorneys' fees in accordance with the limit agreed to in the Fee Agreement.  J.A. 722-23, 1434-35 ¶ 4.a.  The Notice further stated Plaintiffs' intent to request incentive awards for the Class Representatives, as well as reimbursement of expenses and costs incurred by the Class Representatives that were "expected to be in the range of $10.5 million."  J.A. 723-24.

On January 25, 2011, in accordance with the Settlement Agreement, Plaintiffs filed separate petitions for (1) Class Counsel's Fees, Expenses and Costs Through Settlement ("Class Counsel's Petition"), J.A. 745-72, and (2) Class Representatives' Petition for Incentive Awards and Expenses incurred through the date of settlement ("Class Representatives' Petition"), J.A. 773-94.  *See* J.A. 568-69 ¶¶ J.1-2 (governing Plaintiffs' petition for "attorneys' fees, expenses and costs … for Class Counsel"); J.A. 570 ¶¶ K.1-2 (governing Plaintiffs' petition for "the amount of incentive awards which will be requested for each Class Representative,

including expenses and costs that were not paid for by attorneys"). In Class Counsel's Petition, Plaintiffs requested $99.9 million in fees, including expenses and costs in the amount of $1,276,598. J.A. 748. In the Class Representatives' Petition, Plaintiffs sought $2.5 million in incentive awards for the Class Representatives and $10.5 million in litigation expenses and costs that were paid by persons other than Class Counsel. J.A. 780-89.

Defendants objected to the Class Representatives' Petition, arguing (among other things) that (1) the Settlement Agreement and the Fee Agreement did not permit a separate recovery for Class Representatives' expenses and costs, and (2) the expenses were paid for by non-parties to the litigation. J.A. 1415-19, 1420-22.

The district court held a fairness hearing on June 20, 2011. During that hearing, the court granted Plaintiffs' request for incentive awards, but denied completely Plaintiffs' request for reimbursement of the Class Representatives' expenses and costs. J.A. 1760-61, at 241-243. The district court stated its belief that the $390,000 Ms. Cobell spent out of her personal funds was not included in the expense request, and thus Ms. Cobell's personal expenses should be reimbursed out of her incentive award. *Id.* The district court then denied the request for the remaining costs and expenses based on its understanding that the Class Representatives were not personally liable for the expenses requested, and its belief that it did not have the authority to award expenses paid for by third parties.

- 11 -

J.A. 1761, at 243.  The district court issued a written order to that effect on July 27, 2011, and entered final judgment for Plaintiffs on August 4, 2011.  J.A. 1784-85, 1790, 1795 (judgment granting final approval of Settlement Agreement).

## 4.  **PLAINTIFFS' MOTION FOR RECONSIDERATION.**

Plaintiffs filed a Motion for Reconsideration of the Class Representatives' Expense Application ("Motion for Reconsideration") on June 27, 2011—after the court's oral ruling at the fairness hearing but before the written order on July 27, 2011, and before the entry of Final Judgment on August 4, 2011.  J.A. 1684-96.  In their Motion for Reconsideration, Plaintiffs again discussed the $390,000 paid by Ms. Cobell out of her personal funds.  J.A. 1686.  Plaintiffs also attempted to clarify for the court that it does have the authority to award costs and expenses paid by third parties on behalf of the Class Representatives, including the amounts borrowed by Blackfeet Development to help fund the litigation.  J.A. 1685, 1687-88, 1692-93.  The Motion for Reconsideration sought $7,685,355.63, which reflected only "those amounts necessary to pay outstanding loans, repayable grants and plaintiffs' experts to which they remain in arrears."  J.A. 1685.

Defendants' response to Plaintiffs' Motion for Reconsideration focused on the Rule 59(e) standard for reconsideration and argued that Plaintiffs failed to satisfy that standard.  J.A. 1765-68.  Defendants also argued, again, that Plaintiffs had failed to prove that the Class Representatives were personally liable for the

costs and expenses sought in their Petition.  J.A. 1768-71.  Lastly, Defendants repeated their argument that the Settlement Agreement and Fee Agreement do not allow recovery of the expenses sought.  J.A. 1771-73.

On June 10, 2013, Plaintiffs filed a Notice of Supplemental Information and Correction Regarding Plaintiffs' Motion for Reconsideration of Class Representatives' Expense Application ("Supplemental Notice").  J.A. 1796-1800. The Supplemental Notice corrected the amount of expenses and costs sought to $8,181,748.63.  J.A. 1796.  The change in amount reflected an error by Plaintiffs in failing to include $496,393.00 in funds loaned to Blackfeet Development by the Indian Land Tenure Foundation ("ILTF") and used by Blackfeet Development to pay pre-settlement costs.  J.A. 1796, 1798, 1802 ¶ 6.  Like the other funds borrowed by Blackfeet Development to fund the litigation, the funds loaned by ILTF must be repaid (with interest).  J.A. 1802-03 ¶¶ 4, 6-7, 1808-09 (Promissory Note).  The Supplemental Notice also provided additional information regarding why funds were loaned to Blackfeet Development, rather than to Ms. Cobell individually.  J.A. 1796-98.

The district court denied Plaintiffs' Motion for Reconsideration on March 20, 2014.  J.A. 1843.  The court analyzed Plaintiffs' Motion under Rule 59(e) of the Federal Rules of Civil Procedure and gave two reasons for its denial.  J.A. 1837-38.  First, the district court held that Plaintiffs raised new arguments in their

Motion for Reconsideration that they could, and should, have raised prior to the court's ruling on the Class Representatives' Petition.  On this basis, the district court refused to reach the merits of Plaintiffs' argument that the Settlement Agreement provided for recovery of the costs and expenses sought by the Class Representatives, separate from and in addition to the expenses and costs paid for by Class Counsel.  J.A. 1841.  Second, the district court held that Plaintiffs failed to show that the Class Representatives were personally liable for the expenses sought.  J.A. 1838.  The district court did not address the $390,000 Ms. Cobell spent out of her own pocket.

Plaintiffs timely filed a notice of appeal of the district court's denial of the Class Representatives' Petition for Expenses and Motion for Reconsideration of Class Representatives' Expense Application on May 16, 2014.  J.A. 1844-46.

## SUMMARY OF THE ARGUMENT

The district court erred in several respects in denying the Class Representatives' Petition and in denying Plaintiffs' Motion for Reconsideration. *First*, the district court improperly analyzed Plaintiffs' Motion for Reconsideration using the standard governing Rule 59(e) motions, rather than pursuant to Rule 54(b), and the reasons given by the district court for denying Plaintiffs' Motion do not support denial under the proper standard.  *Second*, even if the district court properly assessed Plaintiffs' Motion under Rule 59(e), the district court erred in

finding that Plaintiffs raised new arguments in their Motion that they had not raised prior to the court's ruling on the Class Representatives' Petition. *Third*, the district court erred in determining that it lacked the authority to award the costs and expenses sought in the Class Representatives' Petition because they were initially paid by third parties. Recovery of these expenses is allowed under both the Settlement Agreement and controlling law. *Finally*, even if controlling law provides that the Class Representatives can recover only those expenses that they personally incurred, Ms. Cobell did personally incur the $390,000 she paid out of her own pocket. The district court erred in finding that Plaintiffs did not request this amount in the Class Representatives' Petition and further erred in failing to address this amount in denying Plaintiffs' Motion for Reconsideration.

For these reasons, the district court's denial of the Class Representatives' Petition and Plaintiffs' Motion for Reconsideration represents an abuse of discretion warranting vacatur by this Court.

## **ARGUMENT**

## I.   **THE DISTRICT COURT IMPROPERLY ANALYZED PLAINTIFFS' MOTION UNDER FEDERAL RULES OF CIVIL PROCEDURE 59(e), AND ITS FINDINGS DO NOT SUPPORT DENIAL UNDER THE PROPER STANDARD.**

The district court treated Plaintiffs' Motion for Reconsideration as a motion under Rule 59(e) of the Federal Rules of Civil Procedure, and denied the Motion on the basis that Plaintiffs raised new legal arguments that they could have raised

before the court's order on the Class Representatives' Petition.  However,

Plaintiffs' Motion should have been analyzed under the more flexible standard of

Rule 54(b), which does not prohibit Plaintiffs from raising new legal arguments.

Thus, the district court erred in denying Plaintiffs' Motion for Reconsideration, and

should be reversed.

A.     The District Court Applied the Wrong Standard to Plaintiffs' Motion
       for Reconsideration.

Plaintiffs' Motion for Reconsideration challenged the district court's order

denying the Class Representatives' Petition, issued orally at the June 20, 2011

fairness hearing and included as part of the district court's order granting final

approval of the Settlement Agreement.  Motions challenging such interlocutory

orders are governed by Rule 54(b), and the district court erred in analyzing and

denying Plaintiffs' Motion under Rule 59(e).  Decisions to grant or deny a motion

for reconsideration are reviewed for abuse of discretion.  *Capitol Sprinkler*

*Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 225 (D.C. Cir. 2011).

Rule 59(e) governs motions to reconsider a final judgment.  Fed. R. Civ. P.

59(e) ("A motion to alter or amend *a judgment* must be filed no later than 28 days

after the entry of the judgment." (emphasis added)).  Changes to interlocutory

orders or decisions other than a final judgment are governed by Rule 54(b).  As

this Court has explained, Rule 54(b) "recognizes [the district court's] inherent

power to reconsider an interlocutory order 'as justice requires.'"  *Capitol Sprinkler*,

- 16 -

630 F.3d at 227; *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however

designated, that adjudicates fewer than all the claims or the rights and liabilities of

fewer than all the parties … may be revised at any time before the entry of a [final]

judgment… ."); *Cobell v. Norton*, 224 F.R.D. 266, 271-72 (D.D.C. 2004) ("Rule

54(b) governs reconsideration of orders that do not constitute final judgments").

The "as justice requires" standard governing Rule 54(b) motions is "more

flexib[le]" than the standard for determining whether reconsideration is appropriate

under Rule 59(e).  *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005); *see*

*also American Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th

Cir. 2003) ("Motions for reconsideration of interlocutory orders are not subject to

the strict standards applicable to motions for reconsideration of a final judgment.").

The Rule 54(b) standard "amounts to determining, within the Court's discretion,

whether reconsideration is necessary under the relevant circumstances." *Cobell*,

355 F. Supp. 2d at 539.  This may include, for example, if the movant "proffer[s]

supplemental evidence or new legal theories," "where the court has patently

misunderstood a party," or where "the moving party can point to controlling

decisions or data that the court overlooked—matters, in other words, that might

*reasonably be expected to alter the conclusion reached by the court.*"  *Id.*

(emphasis in original) (internal quotations omitted).  To warrant reconsideration,

"the movant must demonstrate that some harm, legal or at least tangible, would

- 17 -

flow from a denial of reconsideration." *Id.* at 540. Thus, unlike a Rule 59(e) determination, reconsideration under Rule 54(b) may properly consider new legal arguments, or may be used to correct a misunderstanding or failure to consider information by the court. *Compare Johnson-Parks v. D.C. Chartered Health Plan*, 806 F. Supp. 2d 267, 270-71 (D.D.C. 2011) (granting Rule 54(b) motion for reconsideration because court overlooked information provided by plaintiff), *with GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012) (holding that a Rule 59(e) motion may not be used to raise arguments or present evidence that could have been raised before the entry of judgment).

Because Plaintiffs' Motion for Reconsideration challenging the district court's ruling was filed before final judgment was entered on August 4, 2011, it is properly addressed using Rule 54(b)'s "as justice requires" standard, rather than the standard governing Rule 59(e) motions. *See North v. United States Dep't of Justice*, 810 F. Supp. 2d 205, 207 n.1 (D.D.C. 2011) (plaintiff's motion for reconsideration was governed by Rule 54(b) because, although the court had entered judgment for defendants on all claims, final judgment had not been entered); *Williams v. Savage*, 569 F. Supp. 2d 99, 102 n.1 (D.D.C. 2008) (motion was governed by Rule 54(b) "[b]ecause the plaintiffs filed their motion before the court issued a final judgment"); *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 42, 47-48 (D.D.C. 2001) (plaintiff's motion seeking to amend summary judgment

order was not governed by Rule 59(e) because it did not seek to amend a final judgment); *Friedman v. Typhoon Air Conditioning Co.*, 31 F.R.D. 287, 289 (E.D.N.Y. 1962) (motion seeking reconsideration of order granting motion to dismiss, filed before final judgment was entered, was not subject to Rule 59(e)).

The district court recognized that Plaintiffs' Motion was filed before, and was not challenging, any final judgment entered by the court. *See* J.A. 1837 ("plaintiffs filed their motion for reconsideration about a week after the Court issued a ruling from the bench … and *before the Court issued judgment* on August 4, 2011") (emphasis added). Despite this, the district court analyzed Plaintiffs' Motion using the standard governing Rule 59(e) motions. *See id.* ("[t]he Court … will treat the plaintiffs' motion for reconsideration as a timely motion to alter or amend the judgment pursuant to Rule 59(e)"). This alone is an abuse of discretion warranting vacatur and remand for the district court to apply the correct standard. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (the "district court abuses its discretion if it did not apply the correct legal standard"); *Hill v. Republic of Iraq*, 328 F.3d 680, 683 (D.C. Cir. 2003) ("it is an abuse of discretion to apply the wrong standard").

     B.     The District Court's Findings Do Not Support Denial Under the Proper Standard.

The district court further erred in denying Plaintiffs' Motion for Reconsideration on the grounds that Plaintiffs raised new legal arguments in their

Motion.  Even if the district court's finding that Plaintiffs raised new arguments in

their Motion was supported by the record (which, as discussed in Section II, *infra*,

it was not), this is not a proper basis upon which to deny a motion made under

Rule 54(b).  The district court's denial should be vacated for this additional reason.

District court found that Plaintiffs did not raise the argument that the

Class Representatives were personally liable for the expenses sought before the

court issued its ruling, but that they could have.  *See* J.A. 1838 ("For this reason

alone the Court will deny the motion.").  Similarly, the district court found that

Plaintiffs failed to previously raise the argument that the Settlement Agreement

provided for the payment of Class Representatives' costs and expenses separate

from Class Counsel's costs and expenses "and, therefore, [it] is not a proper

subject of the motion for reconsideration."  J.A. 1841.

These holdings were in error.  Even if Plaintiffs raised new arguments

(which they did not), that is not a proper basis upon which to deny a motion for

reconsideration under Rule 54(b)'s "as justice requires" standard.  *See Cobell*, 355

F. Supp. 2d at 539 (reconsideration may be warranted under Rule 54(b)'s "as

justice requires" standard if the movant "proffer[s] supplemental evidence or new

legal theories") (quotations omitted).  Therefore, the district court's denial of

Plaintiffs' Motion for Reconsideration should be reversed and the issue remanded

for an application of the correct legal standard under Rule 54(b).  *See, e.g., Saint*

- 20 -

*Annes Dev. Co., Inc. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (vacating

denial of motion for reconsideration because district court improperly applied Rule

59(e) standard to motion seeking reconsideration of interlocutory order).

## II.    THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFFS RAISED NEW ARGUMENTS IN THEIR MOTION FOR RECONSIDERATION.

Even if the district court properly reviewed Plaintiffs' Motion for

Reconsideration under Rule 59(e), it erred in finding that Plaintiffs raised new

arguments in their Motion.  This finding was an abuse of discretion, and this Court

should vacate the district court's denial of Plaintiffs' Motion for Reconsideration

for this additional reason.

The district court found that Plaintiffs did not previously argue that the

Settlement Agreement provided for the payment of Class Representatives'

expenses separate from Class Counsel's expenses, and thus refused to consider that

argument.  J.A. 1841.  This finding is plainly refuted by the pleadings.  Plaintiffs

made this same argument in their brief in support of the Class Representatives'

Petition.  *See* J.A. 788 n.9 ("Section K.1 of the Settlement Agreement specifically

provides that Class Representatives may petition this Court to be reimbursed for

'expenses and costs that were not paid for by attorneys.'").  They raised this

argument again in their Reply brief, citing the same Settlement Agreement

provision and noting that "[t]he subject expenses have not been paid by attorneys."

J.A. 1651 n.5.  Later in their Reply brief, Plaintiffs argued:

> The Settlement Agreement makes clear that two separate petitions
> would be submitted by plaintiffs, one for fees, expenses, and costs of
> Class Counsel; another for Class Representatives' incentive awards,
> expenses, and costs. … Thus, the Settlement Agreement and the Fee
> Agreement draw a clear distinction between expenses and costs <u>paid</u>
> or assumed by Class Counsel – which were required to be included in
> the petition for Class Counsel's fees, expenses and costs – and
> expenses <u>not</u> paid or assumed for by Class Counsel. … Moreover, the
> Settlement Agreement plainly and unambiguously recognizes that
> Class Representatives have incurred significant obligations that have
> not been paid or assumed by Class Counsel and, as such, recovery
> must be requested as expenses of the Class Representatives, not Class
> Counsel.

J.A. 1664-65 (citing Settlement Agreement ¶¶ J, K) (emphases in original).

Finally, Plaintiffs challenged Defendants' position that the Class

Representatives are prohibited from recovering "expenses and costs that have been

assumed or paid by organizations that have assisted Class Representatives" as

unsupported by and inconsistent with the Settlement Agreement:  "the phrase

'personal expenses' never appears in the Settlement Agreement, any other

agreement, or the Claims Resolution Act."  J.A. 1666, 1669.

The district court evidently overlooked or misunderstood these arguments

made by Plaintiffs in support of the Class Representatives' Petition, and its finding

that these arguments were first raised in Plaintiffs' Motion for Reconsideration was

an abuse of discretion.  *See Linder v. Dep't of Defense*, 133 F.3d 17, 24 (D.C. Cir.

1998) ("An abuse of discretion occurs when the court … relies on clearly

erroneous facts.").

## III.   THE DISTRICT COURT ERRED IN FINDING THAT IT LACKED AUTHORITY TO AWARD EXPENSES PAID BY THIRD PARTIES.

The district court further erred in holding that it did not have the authority to

award reimbursement of expenses paid by third parties to further the litigation.

The Settlement Agreement permits reimbursement of the types of expenses sought

in the Class Representatives' Petition, and controlling law does not prevent the

award of expenses where the party did not personally pay those expenses.

### A.   The Settlement Agreement Allows Reimbursement of the Class Representatives' Expenses Sought in Their Petition.

During the June 20, 2011 fairness hearing, the district court held that it did

not have the authority to award expenses paid for by third parties.  J.A. 1761, at

243.  The court then denied the Class Representatives' Petition and Plaintiffs'

Motion for Reconsideration on the grounds that Plaintiffs failed to show that the

expenses sought were those for which the Class Representatives were personally

liable.  J.A. 1790, 1838.  The plain language of the Settlement Agreement permits

the Class Representatives to recover these costs and expenses *regardless* of

whether they are personally liable for them, so long as those costs and expenses

were not paid for by Class Counsel.

- 23 -

This Court reviews the district court's interpretation of the court-approved Settlement Agreement *de novo*. *See Nix v. Billington*, 448 F.3d 411, 414 (D.C. Cir. 2006) ("The District Court's construction of the court-approved Settlement Agreement is … reviewed *de novo*."); *S.E.C. v. Loving Spirit Found. Inc.*, 392 F.3d 486, 491 (D.C. Cir. 2004) (district court's interpretation of settlement agreement reviewed *de novo*); *Minority Emps. at NASA (MEAN) v. Beggs*, 723 F.2d 958, 961 (D.C. Cir. 1983) ("Because the order … was based on the magistrate's construction of the Settlement …, the order poses a legal question which we must review *de novo* on appeal.").

The structure and language of the parties' agreements clearly distinguish between those fees, costs, and expenses paid by Class Counsel and those "expenses and costs that were not paid for by attorneys." Paragraph J of the Settlement Agreement allows Plaintiffs to petition for the recovery of Class Counsel's fees, costs, and expenses, while the Fee Agreement limits Plaintiffs to requesting no more than $99.9 million for attorneys' fees incurred pre-settlement. J.A. 568-69 ¶ J.2, 1434-35 ¶ 4.a. Paragraph K of the Settlement Agreement permits Plaintiffs to petition for "incentive awards" and "*expenses and costs*, of the Class Representatives," so long as those expenses and costs "were not paid for by attorneys." J.A. 570 ¶¶ K.1-2 (emphasis added). This provision is intended to allow the Class Representatives to recover the costs and expenses incurred directly

- 24 -

by them, or by third parties on their behalf, while preventing the double recovery of those costs and expenses paid for by Class Counsel and already sought in Class Counsel's petition.

The parties recognized in the Settlement Agreement that the expenses and costs to be included in the Class Representatives' petition, *separate from those requested in Class Counsel's petition*, would be significant—"in the range of $15 million . . . ." J.A. 570 ¶ K.1.  Nowhere in the Settlement Agreement or the Fee Agreement is there any limitation on Class Representatives' recovery of costs and expenses incurred by them or by third parties on their behalf, except that the Class Representatives could not seek recovery for costs and expenses paid for, and already sought by, Class Counsel.  More telling, *nowhere* in the Settlement Agreement does it require that the Class Representatives personally paid or incurred personal liability for costs and expenses in order to recover them.  Again, the only limit placed on the recovery of expenses by the Class Representatives is that the expenses "were not paid for by [Class Counsel]."  *Id.*  Consequently, any argument that the Class Representatives did not incur personal liability for the costs and expenses requested in their Petition is irrelevant, and the district court erred in denying the Class Representatives' Petition and Plaintiffs' Motion for Reconsideration on that ground.

B.    Controlling Law Does Not Require That the Class Representatives Personally Incurred the Costs and Expenses.

This Court reviews the district court's interpretation of law *de novo*.  *See Yousuf v. Samantar*, 451 F.3d 248, 251 (D.C. Cir. 2006) (questions of law, including interpretations of the Federal Rules of Civil Procedure, are reviewed *de novo*).

Rule 54(d) of the Federal Rules of Civil Procedure provides that "costs—other than attorneys' fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).  This rule plainly lacks any requirement that the recovering party have personally incurred or be personally liable for costs in order to be entitled to their recovery.  *See Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639-40 (11th Cir. 1991) (adopting the Florida Supreme Court's reasoning that "it is unnecessary to inquire into the source of the funds used for the initial payment of costs in order to award taxable costs to the winning party" under Rule 54(d) (quoting *Aspen v. Bayless*, 564 So.2d 1081, 1083 (Fla. 1990)); *King v. Gowdy*, No. 02-CV-75136-DT, 2008 WL 1820837, at *2 (E.D. Mich. Apr. 22, 2008) (allowing plaintiff to recover costs paid by pro bono fund, noting that under Rule 54(d)(1) "it is irrelevant whether the taxable costs in question were actually paid by plaintiff or by a third party. Costs are 'allowed to the prevailing party,' period.").

- 26 -

Likewise, the Claims Resolution Act of 2010, the statute by which Congress

approved the parties' Settlement Agreement, contains no such requirement.

Section 101(g) of that statute provides:

> (g) INCENTIVE AWARDS AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND COSTS UNDER SETTLEMENT AGREEMENT.⸺
>
> (1) IN GENERAL — Subject to paragraph (3), the court in the Litigation shall determine the amount to which the Plaintiffs in the Litigation may be entitled for incentive awards *and for attorneys' fees, expenses, and costs*⸺
>
> (A) *in accordance with controlling law* …
>
> …
>
> (3) EFFECT ON AGREEMENT.⸺ Nothing in this subsection limits or otherwise affects the enforceability of the Agreement on Attorneys' Fees, Expenses, and Costs.

J.A. 613 (emphasis added).

Defendants pointed to no law requiring the Class Representatives to have

personally paid or incurred liability for the costs and expenses sought in their

Petition. *See* J.A. 1768-71. There is no such law that controls here. *See Moore v.*

*Mercier*, 242 F.3d 376, 376 (8th Cir. 2000) (unpublished) (no authority

"preclude[es] a cost award merely because a third party will be the ultimate

beneficiary of the award"); *Compagnie des Bauxites de Guinee v. Hammermills,*

*Inc.*, No. 90-0169 (JGP), 1992 WL 122712, at *3 n.6 (D.D.C. May 29, 1992)

(rejecting as "dubious" plaintiff's argument that, because defendant's costs were

paid by a third party, defendant did not "incur" those costs so as to be entitled to recover them, noting the "prevailing rule" to the contrary); *Guarrasi v. Gibbons*, No. 07-5475, 2011 WL 382598, at *1 (E.D. Pa. Feb. 3, 2011) ("no authority precluding an award of costs merely because those costs were paid by a third party," regardless of obligation to repay third party) (collecting cases); *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, No. 3:06-CV-812-L(BH), 2012 WL 1835759, at *2 (N.D. Tex. Apr. 30, 2012) (allowing defendant to recover costs paid by parent company on its behalf, noting Rule 54(d) does not preclude recovery of costs paid by third parties and the "weight of authority" in favor of allowing such recovery), *report and recommendation adopted*, 3:06-CV-812-L, 2012 WL 1835753 (N.D. Tex. May 21, 2012). Thus, because the Settlement Agreement allows recovery of the costs and expenses sought in the Class Representatives' Petition, and no controlling law bars such recovery, the district court erred in denying the Class Representatives' Petition and Motion for Reconsideration on the grounds that the Class Representatives did not personally pay those expenses.

## IV.   MS. COBELL PERSONALLY INCURRED SOME EXPENSES SOUGHT IN THE PETITION.

Even if the Settlement Agreement and controlling law do require that the Class Representatives personally incurred the costs and expenses sought in their Petition, Ms. Cobell personally incurred some of those expenses.

Plaintiffs sought reimbursement of the $390,000 Ms. Cobell paid out of her personal funds in the Class Representatives' Petition. *See* J.A. 782 ("Ms. Cobell personally contributed almost $390,000 to fund the case"); J.A. 788 ("Ms. Cobell has incurred significant litigation expenses and costs in prosecuting this action."); J.A. 801 ¶ 20 (Affidavit of Ms. Cobell describing personal funds she contributed to the litigation); J.A. 1741, at 164 ("When this case needed additional funds, [Ms. Cobell] took $390,000 of her own money that she had won in a McArthur Genius Foundation Award, and she utilized it for experts in this case."). The district court incorrectly believed that Plaintiffs did not include this amount in the expenses requested in the Class Representatives' Petition. *See* J.A. 1761, at 243 ("Ms. Cobell's personal expenses, out-of-pocket ones, was [sic] not included in that expense request as I understand it . . . .").

In their Motion for Reconsideration, Plaintiffs attempted to clarify to the district court that Ms. Cobell used $390,000 of her *personal funds* to support the litigation, and that this amount was sought as part of the $10.5 million requested in the Class Representatives' Petition. *See* J.A. 1686 (including the $390,000 as part of the $10.5 million calculation). The district court did not address the $390,000 Ms. Cobell spent out of her own pocket in its order denying Plaintiffs' Motion for Reconsideration. However, it is undisputed that this amount was personally paid by Ms. Cobell to fund this litigation, and thus should be reimbursed. Therefore,

- 29 -

this Court should reverse the district court's denial of the Class Representatives'

Petition, at least as to the $390,000 personally paid by Ms. Cobell.

## **CONCLUSION**

The Court should vacate the district court's denial of Class Representatives'

Petition for Incentive Awards and Expenses and its denial of Plaintiffs' Motion for

Reconsideration, and remand for further proceedings.


David C. Smith
KILPATRICK TOWNSEND &
   STOCKTON LLP
Suite 900
607 14th Street, N.W
Washington, D.C. 20005
(202) 508-5844

/s/ Adam H. Charnes
Adam H. Charnes
Elizabeth L. Winters
KILPATRICK TOWNSEND &
   STOCKTON LLP
1001 W. Fourth Street
Winston-Salem, North Carolina 27101
 (336) 607-7300

William E. Dorris
KILPATRICK TOWNSEND &
   STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
(404) 815-6500

*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 6,696 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in a proportionally spaced typeface using MS Word 2003 in Times

New Roman 14-point font.

DATED: October 2, 2014

/s/ Adam H. Charnes
Adam H. Charnes
Elizabeth L. Winters
KILPATRICK TOWNSEND &
    STOCKTON LLP
1001 W. Fourth Street
Winston-Salem, North Carolina 27101
 (336) 607-7300

*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2011, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record.

DATED: October 2, 2014.

/s/ Adam H. Charnes
Adam H. Charnes
Elizabeth L. Winters
KILPATRICK TOWNSEND &
   STOCKTON LLP
1001 W. Fourth Street
Winston-Salem, North Carolina 27101
 (336) 607-7300

*Counsel for Plaintiffs-Appellants*

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

**Page**

**CASES**

*Moore v. Mercier*,
    242 F.3d 376 (8th Cir. 2000) ..............................................................1

*Saint Annes Dev. Co., Inc. v. Trabich*,
    443 F. App'x 829 (4th Cir. 2011) ...................................................3

**STATUTE**

Claims Resolution Act of 2010, Pub. L. No. 111-291,
124 Stat. 3064 (2010) .......................................................................9

**RULES**

Fed. R. Civ. P. 54(b) ..........................................................................17

Fed. R. Civ. P. 54(d)(1)......................................................................17

Fed. R. Civ. P. 59(e)...........................................................................25

242 F.3d 376, 2000 WL 1511402 (C.A.8 (Mo.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 242 F.3d 376, 2000 WL 1511402 (C.A.8 (Mo.)))**

ᴄ
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA8 Rule 28A, FI CTA8 IOP and FI CTA8 APP. I for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Eighth Circuit.
Edward Allen MOORE, Appellant,
v.
David J. MERCIER; Dora Schriro; Steve Long; Pat Faherty; Chris Swicord; Ray New; John Sydow; Correctional Medical Systems, Inc., Appellees.

No. 00-2099.
Submitted Oct. 4, 2000.
Decided Oct. 12, 2000.

The United States District Court for the Western District of Missouri, Scott O. Wright, J., found in favor of defendants in inmate's action, and entered order awarding costs to defendants. Inmate appealed. The Court of Appeals held that award of costs was not abuse of discretion.

Affirmed.

West Headnotes

**[1]** ⚷2731

170A Federal Civil Procedure
   170AXIX Fees and Costs
      170Ak2731 k. Persons Liable. Most Cited Cases
   (Formerly 98k6)

District court did not abuse its discretion in awarding costs to defendants in inmate's action, even if state had actually paid defendants' costs and award would render inmate unable to buy basic necessities of life, where prison was obligated to provide basic hygiene items to inmates who could not pay for them.

**[2]** **Federal Civil Procedure 170A** ⚷2721

170A Federal Civil Procedure
   170AXIX Fees and Costs
      170Ak2721 k. In General. Most Cited Cases

Cost award is not precluded merely because third party will be ultimate beneficiary of award.

Appeal from the United States District Court for the Western District of Missouri.

Before MCMILLIAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

[UNPUBLISHED]
PER CURIAM.

**\*1** [1] Missouri inmate Edward Moore appeals from the district court's [FN1] order denying his objection to taxation of costs. Moore argues that the award of costs should be overturned because the State of Missouri actually paid the costs of the prevailing-party defendants to whom the award was made, and that the award will render him unable to buy the basic necessities of life. We conclude that the district court did not abuse its discretion, *see Greaser v. State of Missouri, Dept. of Corrections,* 145 F.3d 979, 985 (8th Cir.) (standard of review), *cert. denied,* 525 U.S. 1056, 119 S.Ct. 620, 142 L.Ed.2d 559 (1998), and affirm.

[2] First, Moore fails to point to any authority precluding a cost award merely because a third party will be the ultimate beneficiary of the award, and in fact, analogous case authority suggests otherwise. *See*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

242 F.3d 376, 2000 WL 1511402 (C.A.8 (Mo.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 242 F.3d 376, 2000 WL 1511402 (C.A.8 (Mo.)))**

*Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 639 (11th Cir.1991) (funding of insured's defense by insurer was irrelevant to award of costs). Moore's reliance on *Sampley v. Duckworth,* 72 F.3d 528, 530-32 (7th Cir.1995), *cert. denied,* 517 U.S. 1220, 116 S.Ct. 1849, 134 L.Ed.2d 950 (1996), is misplaced as it involved a non-party's direct attempt to obtain costs the court deemed non-recoverable under 28 U.S.C. § 1920.

Second, even assuming collateral estoppel principles do not bar Moore from raising the issue of his indigency-given our decision in a prior case that assessment of a filing fee was not an abuse of discretion despite Moore's assertion of indigency, *see Moore v. Groose,* No. 93-3337, 1994 WL 150382, at [*]1 (8th Cir. Apr. 28, 1994) (unpublished per curiam); *Popp Telcom v. American Sharecom, Inc.,* 210 F.3d 928, 939 (8th Cir.2000) (elements of collateral estoppel)-the district court did not abuse its discretion here because it noted that the prison provides Moore with the essential necessities of life. *See McGill v. Faulkner,* 18 F.3d 456, 459 (7th Cir.1994) (plaintiff's indigency does not require court to automatically waive costs for unsuccessful litigant), *cert. denied,* 513 U.S. 889, 115 S.Ct. 233, 130 L.Ed.2d 157 (1994); *Prows v. Kastner,* 842 F.2d 138, 140 (5th Cir.) (court not bound by inmate's priorities), *cert. denied,* 488 U.S. 941, 109 S.Ct. 364, 102 L.Ed.2d 354 (1988); Missouri Department of Corrections Procedure No. IS8-6.1 (prison will provide basic hygiene items to inmates who cannot pay for them). We reject without further discussion Moore's appeal argument that the prison does not provide, and a costs award will prevent him from buying, hygiene items, over-the-counter medication, and writing supplies and stamps.

Accordingly, we affirm.

A true copy.

FN1. The Honorable Scott O. Wright, United

States District Judge for the Western District of Missouri.

C.A.8 (Mo.),2000.
Moore v. Mercier
242 F.3d 376, 2000 WL 1511402 (C.A.8 (Mo.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.)))**

**H**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter.  See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007.   See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
SAINT ANNES DEVELOPMENT COMPANY,
INCORPORATED; Aaron Young, Plaintiffs—Appellees,
v.
Neal TRABICH; Terry Trabich, Defendants—Appellants,
and
Ronald Coruzzi; Irene Coruzzi, Defendants,
v.
Adelberg, Rudow, Dorf & Hendler, LLC, Respondent,
v.
Andrew Radding, Movant.

No. 10–2078.
Submitted: June 14, 2011.
Decided: Aug. 17, 2011.

**Background:** Lenders brought action against borrowers, alleging breach of credit facility agreement, fraud, and conspiracy. Following bench trial, the United States District Court for the District of Maryland, William D. Quarles, Jr., 737 F.Supp.2d 517, entered judgment for lenders. Borrowers appealed.

**Holdings:** The Court of Appeals held that:
(1) district court applied incorrect standard to borrowers' motion for reconsideration of summary judgment on lenders' breach of contract claims;

(2) borrowers engaged in fraud against lenders; and
(3) entering judgment against both borrowers, including on claim against only one borrower, was unwarranted.

Affirmed in part and vacated and remanded in part.

West Headnotes

**[1] Federal Civil Procedure 170A ⟨key⟩613.1**

170A Federal Civil Procedure
   170AVI Motions and Orders
      170AVI(C) Reconsideration
         170Ak613.1 k. In general. Most Cited Cases

**Federal Civil Procedure 170A ⟨key⟩2559**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)3 Proceedings
         170Ak2559 k. Subsequent proceedings; reconsideration of denial of motion. Most Cited Cases

**Federal Civil Procedure 170A ⟨key⟩2642**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(G) Relief from Judgment
         170Ak2642 k. Judgments from which relief may be granted. Most Cited Cases

District court order granting summary judgment to lenders on their breach of contract claims against borrowers in relation to consulting fees did not resolve all claims against all parties, and thus was interlocutory in nature, so that proper standard to apply on borrowers' motion for reconsideration was under rule provision regarding judgment on multiple claims or

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**A-3**

443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.)))**

involving multiple parties, rather than under rule provision governing motions to alter or amend final judgments. Fed.Rules Civ.Proc.Rules 54(b), 59(e), 28 U.S.C.A.

**[2] Fraud 184 🗝27**

184 Fraud
    184I Deception Constituting Fraud, and Liability Therefor
        184k27 k. Fraudulent representations or concealment as to particular facts. Most Cited Cases

Borrowers engaged in fraud against lenders by falsely representing in facility agreement with lenders that credit facility was sought for business or commercial purposes and that funds obtained through facility agreement would be used exclusively for specific development project.

**[3] Fraud 184 🗝67**

184 Fraud
    184II Actions
        184II(G) Judgment
            184k67 k. In general. Most Cited Cases

Entering judgment against both borrowers, including on fraud claim that individual lender brought only against one borrower, was unwarranted; possibility that court so structured its judgment in effort to avoid double recovery depended on unsupported assumptions that court intended to direct borrowers to pay over to individual lender, as member of lending corporation, damages that had been awarded to corporation and that such action would have been proper.

*830 Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (1:07–cv–01056–WDQ).David W. Lease, Smith,

Lease and Goldstein, LLC, Rockville, Maryland, for Appellants. Steven B. Gould, Brown & Gould, LLP, Bethesda, Maryland, for Appellees.

Before TRAXLER, Chief Judge, and WILKINSON and DAVIS, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished PER CURIAM opinion.
Unpublished opinions are not binding precedent in this circuit.
PER CURIAM:

**\*\*1** Saint Annes Development Company, LLC ("SADC") and Aaron Young, one of SADC's members (together, the "Plaintiffs"), brought this action against Neal and Terry Trabich and Ronald and Irene Coruzzi, asserting claims of fraud and breach of contract. The district court granted summary judgment in favor of SADC and Young on the breach of contract claim and later, after a bench trial, entered judgment in favor of SADC and Young on the fraud claim. The Trabiches appeal. We affirm in part, vacate in part, and remand.

I.

The claims at issue in this case spring from a financing agreement (the "Facility Agreement") to provide funding for the Trabiches and the Coruzzis to develop and build the "Saint Annes Project," a golf and residential community in Middletown, Delaware. Under the Facility Agreement, SADC agreed to arrange through a third-party lender a credit facility that would permit the Trabiches and the Coruzzis to borrow up to one million dollars under a revolving line of credit. The Facility Agreement, which was executed on May 2, 2006, required repayment of the line of credit, plus all fees imposed by the third-party lender, by December 31, 2009. Under the Facility Agreement, the Trabiches and the Coruzzis were obligated to pay SADC annual fees in the amount 10% of the principal balance borrowed under the credit facility. The Facility Agreement also required the Trabiches to pay

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.)))**

SADC fees for consulting services to be provided over a 20–year period after the termination of the underlying credit facility—$100,000 per year for the first ten years, and $75,000 per year for the next ten years. The Facility Agreement did not specify the nature of the consulting services that SADC would provide.

Young sought the assistance of a colleague, and the colleague was able to obtain a $1,000,000 line of credit through Wachovia Bank. The Trabiches executed a promissory note in favor of Wachovia and immediately withdrew the full amount available under the line of credit.

In November 2006, approximately six months after the Wachovia line of credit was established, the Trabiches sued Wachovia, SADC, and SADC's members in state court in New York. The Trabiches alleged, *inter alia,* that the Facility Agreement was usurious and thus void and unenforceable under New York law. The verified complaint filed in that action was signed, under oath, by Trabich, and it included various factual allegations that were inconsistent with the terms of the Facility Agreement. For example, the Facility Agreement stated that the credit facility was for commercial purposes and **\*831** that the funds would be used exclusively for the Saint Annes Project. In the verified complaint, however, Trabich asserted that, as to the Trabiches, the Facility Agreement had no commercial purpose. Trabich also alleged that the consulting-services provision in the Facility Agreement was a sham because there was no expectation by any party that any consulting services would ever be provided by SADC. *See* J.A. 89–90, 694, 697.

**\*\*2** After filing the New York action, the Trabiches continued to perform their obligations under the Facility Agreement for some period of time, making interest payments to Wachovia through October 19, 2007. In November 2007, the Trabiches' New York attorney informed SADC that no further interest payments would be made and that all matters would be resolved at trial.

SADC thereafter issued a notice of default and demanded that the Trabiches and Coruzzis make the required payments to cure the default. Neither the Trabiches nor the Coruzzis cured the defaults, and SADC notified them of its election to accelerate all payments due under the Facility Agreement and the promissory note. SADC paid the principal and interest owed to Wachovia under the line of credit, and the Plaintiffs then brought this action asserting fraud and breach of contract claims against the Trabiches and the Coruzzis.

The district court granted summary judgment in favor of SADC on the breach of contract claims, and the case proceeded to trial on the remaining fraud claims. After a bench trial, the district court rejected two of the fraud claims asserted by the Plaintiffs, but the court found in favor of SADC on Count IV and found in favor of Young on Count V. The court thereafter entered final judgment, and this appeal by the Trabiches followed.

II.

We turn first to the Trabiches' challenge to the grant of summary judgment on the Plaintiffs' breach of contract claims. In these claims, SADC sought from the Trabiches and the Coruzzis recovery of the principal and interest SADC paid to Wachovia, along with certain other payments and fees that were due under the Facility Agreement. SADC also sought only from the Trabiches an award of $1,750,000 (plus post-judgment interest), the accelerated total of the 20 years of consulting fees the Trabiches were obligated to pay under the Facility Agreement. The district court granted summary judgment in favor of SADC on these claims, finding the Trabiches and the Coruzzis jointly and severally liable for approximately $1,250,000, plus post-judgment interest, on the Wachovia claim, and finding the Trabiches liable for $1,750,000, plus post-judgment interest, on the consulting-fees claim.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.)))**

[1] The Trabiches filed a motion for reconsideration. As to the Wachovia claim, the Trabiches argued that there were material issues of fact in dispute that precluded the grant of summary judgment. As to the consulting-fees claim, the Trabiches argued, *inter alia,* that the acceleration of the consulting fees due under the Facility Agreement amounted to an unenforceable penalty and that, in any event, any award representing future consulting fees should have been reduced to present value. The district court denied the motion, concluding that the Trabiches failed to satisfy the requirements for amending a judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *See* J.A. 68–69.

On appeal, the Trabiches do not challenge the district court's disposition of the Wachovia claim, but instead focus only on the grant of summary judgment in favor of SADC on the consulting-fees claim. They argue that the summary judgment order **\*832** was an interlocutory order subject to revision at any time, and that the district court erred by considering their motion for reconsideration under the standard governing motions filed under Rule 59(e) of the Federal Rules of Civil Procedure. We agree.

**\*\*3** Motions to alter or amend under Rule 59(e) may be granted if necessary "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998). Rule 59(e), however, applies only to final judgments. *See Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1469 (4th Cir.1991). As the Trabiches contend, the district court's summary judgment order, which did not resolve all claims against all parties, was interlocutory and thus subject to revision at any time. *See* Fed.R.Civ.P. 54(b) (Unless certified as final, "any order or other decision, however designated, that ad-

judicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *American Canoe Assoc. v. Murphy Farms, Inc.,* 326 F.3d 505, 514–15 (4th Cir.2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted.").

The power to reconsider or modify interlocutory rulings "is committed to the discretion of the district court," and that discretion is not cabined by the "heightened standards for reconsideration" governing final orders. *American Canoe,* 326 F.3d at 514–15; *see also Fayetteville Investors,* 936 F.2d at 1473 (interlocutory orders "are left within the plenary power of the Court that rendered them to afford such relief from them as justice requires" (quoting 7 *Moore's Federal Practice* ¶ 60.20)). Because the district court applied the wrong legal standard to the Trabiches' motion for reconsideration, we vacate that portion of the partial summary judgment order finding the Trabiches liable on the consulting-fees claims, and we remand for reconsideration of the motion under the proper legal standard. *See RZS Holdings AVV v. PDVSA Petroleo S.A.,* 506 F.3d 350, 356 (4th Cir.2007) ("By definition, a district court abuses its discretion when it makes an error of law."); *Fayetteville Investors,* 936 F.2d at 1473–74 (reversing and remanding because district court applied wrong legal standard to motion seeking reconsideration of interlocutory order).[FN*] Nothing in this opinion, however, should **\*833** be understood as expressing a view as to whether, upon application of the correct standard, the Trabiches' motion to reconsider should be granted.

FN* We reject SADC's contention that the Trabiches invited the district court's error by including a citation to Rule 59 in the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**A-6**

443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.)))**

"Memorandum and Points of Authority" filed along with its motion for reconsideration. *See United States v. Jackson,* 124 F.3d 607, 617 (4th Cir.1997) ("The invited error doctrine recognizes that a court cannot be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request." (internal quotation marks omitted)). Apart from the caption and signature block, the Memorandum contained only a numbered list of four procedural rules (Rules 56, 58, 59, and 60 of the Federal Rules of Civil Procedure), with no elaboration, explanation, or discussion, *see* Supp. J.A. 49; all substantive discussion and argument was contained in the motion itself. The Trabiches did not cite Rule 59 in the motion or otherwise suggest that the motion was filed under Rule 59, and the motion explicitly described the court's order as interlocutory. Under these circumstances, we do not believe that the single, unexplained citation to Rule 59 can be viewed as inviting the court to apply Rule 59 to the interlocutory summary judgment order.

### III.

#### A.

[2] In the bench trial that followed after the partial grant of summary judgment, the district court concluded that the Trabiches committed fraud by falsely representing (in the Facility Agreement) that the credit facility was sought for business or commercial purposes and that the funds obtained through the Facility Agreement would be used exclusively for the Saint Annes Project. The court therefore granted judgment in favor of SADC on the fraud claim alleged in Count IV and in favor of Young on the fraud claim alleged in Count V. After reviewing the record and considering the arguments of the parties, we find no error in the court's legal analysis, nor clear error in the court's factual findings. *See Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.,* 618 F.3d 417, 427 (4th Cir.2010) (per curiam) ("We review a judgment resulting from a bench trial under a mixed standard of review—factual findings may be reversed only if clearly erroneous, while conclusions of law are examined de novo." (alteration and internal quotation marks omitted)); *TFWS, Inc. v. Franchot,* 572 F.3d 186, 196 (4th Cir.2009) ("[I]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, we will not reverse the district court's finding simply because we have become convinced that we would have decided the question of fact differently." (internal quotation marks omitted)). Accordingly, we reject the Trabiches' challenge to the district court's conclusion that they committed fraud.

#### B.

**\*\*4** [3] The fraud claim alleged in Count V was asserted by Young individually against Neal Trabich only, and Count V was the only claim on which Young (individually) prevailed. The formal order of judgment directed that judgment be entered against Neal Trabich in favor of Young on Count V, but the order also stated that the Trabiches (that is, Neal *and* Terry Trabich) were jointly and severally liable to Young for damages of more than $66,000. *See* J.A. 110. On appeal, the Trabiches contend that the district court erred by entering judgment on Count V against Terry Trabich, given that Young did not assert his fraud claim against her.

The Plaintiffs concede that the judgment did not track the counts asserted in the complaint, but they argue that the court structured the judgment as it did in order to avoid double recovery through the damages awarded on the various claims on which Plaintiffs prevailed. While it is possible that the Plaintiffs' explanation of the judgment accurately reflects the district court's intention when it entered judgment, the explanation depends on an assumption that the district court intended to direct the Trabiches to pay over to Young (an SADC member) damages that had been awarded to *SADC* and on an assumption that such an

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.))

**(Not Selected for publication in the Federal Reporter)**

**(Cite as: 443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.)))**

action would have been proper. There is nothing in the district court's order that directly supports the Plaintiffs' hypothesis, however, and we are thus left with an error (the entry of judgment against Terry Trabich on a count for which she was not named as a defendant) that we cannot conclude was harmless. Accordingly, we vacate the district court's entry of judgment against Terry Trabich in favor of Young and remand for correction of the judgment. The district court on remand is free to structure the judgment as necessary to avoid **\*834** double recovery, but the court should explain any such adjustments in sufficient detail to facilitate review of that judgment in the event of further appeals.

IV.

For the foregoing reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*

C.A.4 (Md.),2011.

Saint Annes Development Co., Inc. v. Trabich

443 Fed.Appx. 829, 2011 WL 3608454 (C.A.4 (Md.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

PUBLIC LAW 111–291—DEC. 8, 2010

CLAIMS RESOLUTION ACT OF 2010

124 STAT. 3064        PUBLIC LAW 111–291—DEC. 8, 2010

Public Law 111–291
111th Congress

An Act

This Act may be cited as "The Claims Resettlement Act of 2010.".

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the "Claims Resolution Act of 2010".

(b) TABLE OF CONTENTS.—The table of contents of this Act is as follows:

Dec. 8, 2010
[H.R. 4783]

Claims
Resolution Act
of 2010.

42 USC 1305
note.

Sec. 1. Short title; table of contents.

TITLE I—INDIVIDUAL INDIAN MONEY ACCOUNT LITIGATION SETTLEMENT
Sec. 101. Individual Indian Money Account Litigation Settlement.

TITLE II—FINAL SETTLEMENT OF CLAIMS FROM IN RE BLACK FARMERS DISCRIMINATION LITIGATION
Sec. 201. Appropriation of funds for final settlement of claims from In re Black Farmers Discrimination Litigation.

TITLE III—WHITE MOUNTAIN APACHE TRIBE WATER RIGHTS QUANTIFICATION
Sec. 301. Short title.
Sec. 302. Purposes.
Sec. 303. Definitions.
Sec. 304. Approval of Agreement.
Sec. 305. Water rights.
Sec. 306. Contract.
Sec. 307. Authorization of WMAT rural water system.
Sec. 308. Satisfaction of claims.
Sec. 309. Waivers and releases of claims.
Sec. 310. White Mountain Apache Tribe Water Rights Settlement Subaccount.
Sec. 311. Miscellaneous provisions.
Sec. 312. Funding.
Sec. 313. Antideficiency.
Sec. 314. Compliance with environmental laws.

TITLE IV—CROW TRIBE WATER RIGHTS SETTLEMENT
Sec. 401. Short title.
Sec. 402. Purposes.
Sec. 403. Definitions.
Sec. 404. Ratification of Compact.
Sec. 405. Rehabilitation and improvement of Crow Irrigation Project.
Sec. 406. Design and construction of MR&I System.
Sec. 407. Tribal water rights.
Sec. 408. Storage allocation from Bighorn Lake.
Sec. 409. Satisfaction of claims.
Sec. 410. Waivers and releases of claims.
Sec. 411. Crow Settlement Fund.
Sec. 412. Yellowtail Dam, Montana.
Sec. 413. Miscellaneous provisions.

PUBLIC LAW 111–291—DEC. 8, 2010          124 STAT. 3065

Sec. 414. Funding.
Sec. 415. Repeal on failure to meet enforceability date.
Sec. 416. Antideficiency.

TITLE V—TAOS PUEBLO INDIAN WATER RIGHTS

Sec. 501. Short title.
Sec. 502. Purposes.
Sec. 503. Definitions.
Sec. 504. Pueblo rights.
Sec. 505. Taos Pueblo Water Development Fund.
Sec. 506. Marketing.
Sec. 507. Mutual-Benefit Projects.
Sec. 508. San Juan-Chama Project contracts.
Sec. 509. Authorizations, ratifications, confirmations, and conditions precedent.
Sec. 510. Waivers and releases of claims.
Sec. 511. Interpretation and enforcement.
Sec. 512. Disclaimer.
Sec. 513. Antideficiency.

TITLE VI—AAMODT LITIGATION SETTLEMENT

Sec. 601. Short title.
Sec. 602. Definitions.

Subtitle A—Pojoaque Basin Regional Water System

Sec. 611. Authorization of Regional Water System.
Sec. 612. Operating Agreement.
Sec. 613. Acquisition of Pueblo water supply for Regional Water System.
Sec. 614. Delivery and allocation of Regional Water System capacity and water.
Sec. 615. Aamodt Settlement Pueblos' Fund.
Sec. 616. Environmental compliance.
Sec. 617. Funding.

Subtitle B—Pojoaque Basin Indian Water Rights Settlement

Sec. 621. Settlement Agreement and contract approval.
Sec. 622. Environmental compliance.
Sec. 623. Conditions precedent and enforcement date.
Sec. 624. Waivers and releases of claims.
Sec. 625. Effect.
Sec. 626. Antideficiency.

TITLE VII—RECLAMATION WATER SETTLEMENTS FUND

Sec. 701. Mandatory appropriation.

TITLE VIII—GENERAL PROVISIONS

Subtitle A—Unemployment Compensation Program Integrity

Sec. 801. Collection of past-due, legally enforceable State debts.
Sec. 802. Reporting of first day of earnings to directory of new hires.

Subtitle B—TANF

Sec. 811. Extension of the Temporary Assistance for Needy Families program.
Sec. 812. Modifications to TANF data reporting.

Subtitle C—Customs User Fees; Continued Dumping and Subsidy Offset

Sec. 821. Customs user fees.
Sec. 822. Limitation on distributions relating to repeal of continued dumping and
          subsidy offset.

Subtitle D—Emergency Fund for Indian Safety and Health

Sec. 831. Emergency Fund for Indian Safety and Health.

Subtitle E—Rescission of Funds From WIC Program

Sec. 841. Rescission of funds from WIC program.

Subtitle F—Budgetary Effects

Sec. 851. Budgetary effects.

124 STAT. 3066          PUBLIC LAW 111–291—DEC. 8, 2010

# TITLE I—INDIVIDUAL INDIAN MONEY ACCOUNT LITIGATION SETTLEMENT

### SEC. 101. INDIVIDUAL INDIAN MONEY ACCOUNT LITIGATION SETTLEMENT.

(a) DEFINITIONS.—In this section:

(1) AGREEMENT ON ATTORNEYS' FEES, EXPENSES, AND COSTS.—The term "Agreement on Attorneys' Fees, Expenses, and Costs" means the agreement dated December 7, 2009, between Class Counsel (as defined in the Settlement) and the Defendants (as defined in the Settlement) relating to attorneys' fees, expenses, and costs incurred by Class Counsel in connection with the Litigation and implementation of the Settlement, as modified by the parties to the Litigation.

(2) AMENDED COMPLAINT.—The term "Amended Complaint" means the Amended Complaint attached to the Settlement.

(3) FINAL APPROVAL.—The term "final approval" has the meaning given the term in the Settlement.

(4) LAND CONSOLIDATION PROGRAM.—The term "Land Consolidation Program" means a program conducted in accordance with the Settlement, the Indian Land Consolidation Act (25 U.S.C. 2201 et seq.), and subsection (e)(2) under which the Secretary may purchase fractional interests in trust or restricted land.

(5) LITIGATION.—The term "Litigation" means the case entitled Elouise Cobell et al. v. Ken Salazar et al., United States District Court, District of Columbia, Civil Action No. 96–1285 (TFH).

(6) PLAINTIFF.—The term "Plaintiff" means a member of any class certified in the Litigation.

(7) SECRETARY.—The term "Secretary" means the Secretary of the Interior.

(8) SETTLEMENT.—The term "Settlement" means the Class Action Settlement Agreement dated December 7, 2009, in the Litigation, as modified by the parties to the Litigation.

(9) TRUST ADMINISTRATION ADJUSTMENT FUND.—The term "Trust Administration Adjustment Fund" means the $100,000,000 deposited in the Settlement Account (as defined in the Settlement) pursuant to subsection (j)(1) for use in making the adjustments authorized by that subsection.

(10) TRUST ADMINISTRATION CLASS.—The term "Trust Administration Class" means the Trust Administration Class as defined in the Settlement.

(b) PURPOSE.—The purpose of this section is to authorize the Settlement.

(c) AUTHORIZATION.—

(1) IN GENERAL.—The Settlement is authorized, ratified, and confirmed.

(2) AMENDMENTS.—Any amendment to the Settlement is authorized, ratified, and confirmed, to the extent that such amendment is executed to make the Settlement consistent with this section.

(d) JURISDICTIONAL PROVISIONS.—

(1) IN GENERAL.—Notwithstanding the limitation on the jurisdiction of the district courts of the United States in section 1346(a)(2) of title 28, United States Code, the United States

A-12

PUBLIC LAW 111–291—DEC. 8, 2010        124 STAT. 3067

District Court for the District of Columbia shall have jurisdiction of the claims asserted in the Amended Complaint for purposes of the Settlement.

(2) CERTIFICATION OF TRUST ADMINISTRATION CLASS.—

(A) IN GENERAL.—Notwithstanding the requirements of the Federal Rules of Civil Procedure, the court in the Litigation may certify the Trust Administration Class.

(B) TREATMENT.—On certification under subparagraph (A), the Trust Administration Class shall be treated as a class certified under rule 23(b)(3) of the Federal Rules of Civil Procedure for purposes of the Settlement.

(e) TRUST LAND CONSOLIDATION.—

(1) TRUST LAND CONSOLIDATION FUND.—

(A) ESTABLISHMENT.—On final approval of the Settlement, there shall be established in the Treasury of the United States a fund, to be known as the "Trust Land Consolidation Fund".

(B) AVAILABILITY OF AMOUNTS.—Amounts in the Trust Land Consolidation Fund shall be made available to the Secretary during the 10-year period beginning on the date of final approval of the Settlement—

(i) to conduct the Land Consolidation Program; and

(ii) for other costs specified in the Settlement.

(C) DEPOSITS.—

(i) IN GENERAL.—On final approval of the Settlement, the Secretary of the Treasury shall deposit in the Trust Land Consolidation Fund $1,900,000,000 out of the amounts appropriated to pay final judgments, awards, and compromise settlements under section 1304 of title 31, United States Code.

(ii) CONDITIONS MET.—The conditions described in section 1304 of title 31, United States Code, shall be deemed to be met for purposes of clause (i).

(D) TRANSFERS.—In a manner designed to encourage participation in the Land Consolidation Program, the Secretary may transfer, at the discretion of the Secretary, not more than $60,000,000 of amounts in the Trust Land Consolidation Fund to the Indian Education Scholarship Holding Fund established under paragraph (3).

(2) OPERATION.—The Secretary shall consult with Indian tribes to identify fractional interests within the respective jurisdictions of the Indian tribes for purchase in a manner that is consistent with the priorities of the Secretary.

Consultation.

(3) INDIAN EDUCATION SCHOLARSHIP HOLDING FUND.—

(A) ESTABLISHMENT.—On final approval of the Settlement, there shall be established in the Treasury of the United States a fund, to be known as the "Indian Education Scholarship Holding Fund".

(B) AVAILABILITY.—Notwithstanding any other provision of law governing competition, public notification, or Federal procurement or assistance, amounts in the Indian Education Scholarship Holding Fund shall be made available, without further appropriation, to the Secretary to contribute to an Indian Education Scholarship Fund, as described in the Settlement, to provide scholarships for Native Americans.

A-13

(4) ACQUISITION OF TRUST OR RESTRICTED LAND.—The Secretary may acquire, at the discretion of the Secretary and in accordance with the Land Consolidation Program, any fractional interest in trust or restricted land.

(5) TREATMENT OF UNLOCATABLE PLAINTIFFS.—A Plaintiff, the whereabouts of whom are unknown and who, after reasonable efforts by the Secretary, cannot be located during the 5-year period beginning on the date of final approval of the Settlement, shall be considered to have accepted an offer made pursuant to the Land Consolidation Program.

(f) TAXATION AND OTHER BENEFITS.—

(1) INTERNAL REVENUE CODE.—For purposes of the Internal Revenue Code of 1986, amounts received by an individual Indian as a lump sum or a periodic payment pursuant to the Settlement shall not be—

(A) included in gross income; or

(B) taken into consideration for purposes of applying any provision of the Internal Revenue Code that takes into account excludable income in computing adjusted gross income or modified adjusted gross income, including section 86 of that Code (relating to Social Security and tier 1 railroad retirement benefits).

(2) OTHER BENEFITS.—Notwithstanding any other provision of law, for purposes of determining initial eligibility, ongoing eligibility, or level of benefits under any Federal or federally assisted program, amounts received by an individual Indian as a lump sum or a periodic payment pursuant to the Settlement shall not be treated for any household member, during the 1-year period beginning on the date of receipt—

(A) as income for the month during which the amounts were received; or

(B) as a resource.

(g) INCENTIVE AWARDS AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND COSTS UNDER SETTLEMENT AGREEMENT.—

Determination.

(1) IN GENERAL.—Subject to paragraph (3), the court in the Litigation shall determine the amount to which the Plaintiffs in the Litigation may be entitled for incentive awards and for attorneys' fees, expenses, and costs—

(A) in accordance with controlling law, including, with respect to attorneys' fees, expenses, and costs, any applicable rule of law requiring counsel to produce contemporaneous time, expense, and cost records in support of a motion for such fees, expenses, and costs; and

(B) giving due consideration to the special status of Class Members (as defined in the Settlement) as beneficiaries of a federally created and administered trust.

(2) NOTICE OF AGREEMENT ON ATTORNEYS' FEES, EXPENSES, AND COSTS.—The description of the request of Class Counsel for an amount of attorneys' fees, expenses, and costs required under paragraph C.1.d. of the Settlement shall include a description of all material provisions of the Agreement on Attorneys' Fees, Expenses, and Costs.

(3) EFFECT ON AGREEMENT.—Nothing in this subsection limits or otherwise affects the enforceability of the Agreement on Attorneys' Fees, Expenses, and Costs.

(h) SELECTION OF QUALIFYING BANK.—The United States District Court for the District of Columbia, in exercising the discretion

of the Court to approve the selection of any proposed Qualifying Bank (as defined in the Settlement) under paragraph A.1. of the Settlement, may consider any factors or circumstances regarding the proposed Qualifying Bank that the Court determines to be appropriate to protect the rights and interests of Class Members (as defined in the Settlement) in the amounts to be deposited in the Settlement Account (as defined in the Settlement).

(i) APPOINTEES TO SPECIAL BOARD OF TRUSTEES.—The 2 members of the special board of trustees to be selected by the Secretary under paragraph G.3. of the Settlement shall be selected only after consultation with, and after considering the names of possible candidates timely offered by, federally recognized Indian tribes.

(j) TRUST ADMINISTRATION CLASS ADJUSTMENTS.—

(1) FUNDS.—

(A) IN GENERAL.—In addition to the amounts deposited pursuant to paragraph E.2. of the Settlement, on final approval, the Secretary of the Treasury shall deposit in the Trust Administration Adjustment Fund of the Settlement Account (as defined in the Settlement) $100,000,000 out of the amounts appropriated to pay final judgments, awards, and compromise settlements under section 1304 of title 31, United States Code, to be allocated and paid by the Claims Administrator (as defined in the Settlement and pursuant to paragraph E.1.e of the Settlement) in accordance with this subsection.

(B) CONDITIONS MET.—The conditions described in section 1304 of title 31, United States Code, shall be deemed to be met for purposes of subparagraph (A).

(2) ADJUSTMENT.—

(A) IN GENERAL.—After the calculation of the pro rata share in Section E.4.b of the Settlement, the Trust Administration Adjustment Fund shall be used to increase the minimum payment to each Trust Administration Class Member whose pro rata share is—

(i) zero; or

(ii) greater than zero, but who would, after adjustment under this subparagraph, otherwise receive a smaller Stage 2 payment than those Trust Administration Class Members described in clause (i).

(B) RESULT.—The amounts in the Trust Administration Adjustment Fund shall be applied in such a manner as to ensure, to the extent practicable (as determined by the court in the Litigation), that each Trust Administration Class Member receiving amounts from the Trust Administration Adjustment Fund receives the same total payment under Stage 2 of the Settlement after making the adjustments required by this subsection.

(3) TIMING OF PAYMENTS.—The payments authorized by this subsection shall be included with the Stage 2 payments under paragraph E.4. of the Settlement.

(k) EFFECT OF ADJUSTMENT PROVISIONS.—Notwithstanding any provision of this section, in the event that a court determines that the application of subsection (j) is unfair to the Trust Administration Class—

(1) subsection (j) shall not go into effect; and

(2) on final approval of the Settlement, in addition to the amounts deposited into the Trust Land Consolidation Fund

pursuant to subsection (e), the Secretary of the Treasury shall deposit in that Fund $100,000,000 out of amounts appropriated to pay final judgments, awards, and compromise settlements under section 1304 of title 31, United States Code (the conditions of which section shall be deemed to be met for purposes of this paragraph) to be used by the Secretary in accordance with subsection (e).

# TITLE II—FINAL SETTLEMENT OF CLAIMS FROM IN RE BLACK FARMERS DISCRIMINATION LITIGATION

## SEC. 201. APPROPRIATION OF FUNDS FOR FINAL SETTLEMENT OF CLAIMS FROM IN RE BLACK FARMERS DISCRIMINATION LITIGATION.

(a) DEFINITIONS.—In this section:

(1) SETTLEMENT AGREEMENT.—The term "Settlement Agreement" means the settlement agreement dated February 18, 2010 (including any modifications agreed to by the parties and approved by the court under that agreement) between certain plaintiffs, by and through their counsel, and the Secretary of Agriculture to resolve, fully and forever, the claims raised or that could have been raised in the cases consolidated in *In re Black Farmers Discrimination Litigation,* Misc. No. 08–mc–0511 (PLF), including Pigford claims asserted under section 14012 of the Food, Conservation, and Energy Act of 2008 (Public Law 110–246; 122 Stat. 2209).

(2) PIGFORD CLAIM.—The term "Pigford claim" has the meaning given that term in section 14012(a)(3) of the Food, Conservation, and Energy Act of 2008 (Public Law 110–246; 122 Stat. 2210).

(b) APPROPRIATION OF FUNDS.—There is appropriated to the Secretary of Agriculture $1,150,000,000, to remain available until expended, to carry out the terms of the Settlement Agreement if the Settlement Agreement is approved by a court order that is or becomes final and nonappealable, and the court finds that the Settlement Agreement is modified to incorporate the additional terms contained in subsection (g). The funds appropriated by this subsection are in addition to the $100,000,000 of funds of the Commodity Credit Corporation made available by section 14012(i) of the Food, Conservation, and Energy Act of 2008 (Public Law 110–246; 122 Stat. 2212) and shall be available for obligation only after those Commodity Credit Corporation funds are fully obligated. If the Settlement Agreement is not approved as provided in this subsection, the $100,000,000 of funds of the Commodity Credit Corporation made available by section 14012(i) of the Food, Conservation, and Energy Act of 2008 shall be the sole funding available for Pigford claims.

(c) USE OF FUNDS.—The use of the funds appropriated by subsection (b) shall be subject to the express terms of the Settlement Agreement.

(d) TREATMENT OF REMAINING FUNDS.—If any of the funds appropriated by subsection (b) are not obligated and expended to carry out the Settlement Agreement, the Secretary of Agriculture shall return the unused funds to the Treasury and may not make

USCA Case #14-5119       Document #1515159       Filed: 10/02/2014       Page 60 of 71

---

United States Code Annotated
   Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
     Title VII. Judgment

---

Federal Rules of Civil Procedure Rule 54

Rule 54. Judgment; Costs

Currentness

**(a) Definition; Form.** "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings.

**(b) Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief-- whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

**(c) Demand for Judgment; Relief to Be Granted.** A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.

**(d) Costs; Attorney's Fees.**

  **(1) *Costs Other Than Attorney's Fees.*** Unless a federal statute, these rules, or a court order provides otherwise, costs-- other than attorney's fees--should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

  **(2) *Attorney's Fees.***

    **(A) *Claim to Be by Motion.*** A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

    **(B) *Timing and Contents of the Motion.*** Unless a statute or a court order provides otherwise, the motion must:

      **(i)** be filed no later than 14 days after the entry of judgment;

      **(ii)** specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

---

**(iii)** state the amount sought or provide a fair estimate of it; and

**(iv)** disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

**(C)** *Proceedings.* Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).

**(D)** *Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge.* By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings. Also, the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

**(E)** *Exceptions.* Subparagraphs (A)-(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927.

**CREDIT(S)**

   (Amended December 27, 1946, effective March 19, 1948; April 17, 1961, effective July 19, 1961; March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 29, 2002, effective December 1, 2002; March 27, 2003, effective December 1, 2003; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009.)

**ADVISORY COMMITTEE NOTES**

1937 Adoption

**Note to Subdivision (a).** The second sentence is derived substantially from [former] Equity Rule 71 (Form of Decree).

**Note to Subdivision (b).** This provides for the separate judgment of equity and code practice. See Wis.Stat. (1935) § 270.54; Compare N.Y.C.P.A. (1937) § 476.

**Note to Subdivision (c).** For the limitation on default contained in the first sentence, see 2 N.D.Comp.Laws Ann. (1913) § 7680; N.Y.C.P.A. (1937) § 479. Compare *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 13, r.r. 3-12. The remainder is a usual code provision. It makes clear that a judgment should give the relief to which a party is entitled, regardless of whether it is legal or equitable or both. This necessarily includes the deficiency judgment in foreclosure cases formerly provided for by Equity Rule 10 (Decree for Deficiency in Foreclosures, Etc.).

**Note to Subdivision (d).** For the present rule in common law actions, see *Ex parte Peterson,* 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920); Payne, *Costs in Common Law Actions in the Federal Courts* (1935), 21 Va.L.Rev. 397.

The provisions as to costs in actions in forma pauperis contained in U.S.C., Title 28, former §§ 832-836 [now 1915] are unaffected by this rule. Other sections of U.S.C., Title 28, which are unaffected by this rule are: [former] §§ 815 (Costs; plaintiff not entitled to, when), 821 [now 1928] (Costs; infringement of patent; disclaimer), 825 (Costs; several actions), 829 [now 1927] (Costs; attorney liable for, when), and 830 [now 1920] (Costs; bill of; taxation).

The provisions of the following and similar statutes as to costs against the United States and its officers and agencies are specifically continued:

U.S.C., Title 15, §§ 77v(a), 78aa, 79y (Securities and Exchange Commission)

U.S.C., Title 16, § 825p (Federal Power Commission)

U.S.C., Title 26, [former] §§ 3679(d) and 3745(d) (Internal revenue actions)

U.S.C., Title 26, [former] § 3770(b)(2) (Reimbursement of costs of recovery against revenue officers)

U.S.C., Title 28, [former] § 817 (Internal revenue actions)

U.S.C., Title 28, § 836 [now 1915] (United States--actions in *forma pauperis* )

U.S.C., Title 28, § 842 [now 2006] (Actions against revenue officers)

U.S.C., Title 28, § 870 [now 2408] (United States--in certain cases)

U.S.C., Title 28, [former] § 906 (United States--foreclosure actions)

U.S.C., Title 47, § 401 (Communications Commission)


The provisions of the following and similar statutes as to costs are unaffected:

U.S.C., Title 7, § 210(f) (Actions for damages based on an order of the Secretary of Agriculture under Stockyards Act)

U.S.C., Title 7, § 499g(c) (Appeals from reparations orders of Secretary of Agriculture under Perishable Commodities Act)

U.S.C., Title 8, [former] § 45 (Action against district attorneys in certain cases)

U.S.C., Title 15, § 15 (Actions for injuries due to violation of antitrust laws)

U.S.C., Title 15, § 72 (Actions for violation of law forbidding importation or sale of articles at less than market value or wholesale prices)

U.S.C., Title 15, § 77k (Actions by persons acquiring securities registered with untrue statements under Securities Act of 1933)

U.S.C., Title 15, § 78i(e) (Certain actions under the Securities Exchange Act of 1934)

U.S.C., Title 15, § 78r (Similar to 78i(e) )

U.S.C., Title 15, § 96 (Infringement of trade-mark--damages)

U.S.C., Title 15, § 99 (Infringement of trade-mark--injunctions)

U.S.C., Title 15, § 124 (Infringement of trade-mark--damages)

U.S.C., Title 19, § 274 (Certain actions under customs law)

U.S.C., Title 30, § 32 (Action to determine right to possession of mineral lands in certain cases)

U.S.C., Title 31, §§ 232 [now 3730] and 234 [former] (Action for making false claims upon United States)

U.S.C., Title 33, § 926 (Actions under Harbor Workers' Compensation Act)

U.S.C., Title 35, § 67 [now 281, 284] (Infringement of patent--damages)

U.S.C., Title 35, § 69 [now 282] (Infringement of patent--pleading and proof)

U.S.C., Title 35, § 71 [now 288] (Infringement of patent--when specification too broad)

U.S.C., Title 45, § 153p (Actions for non-compliance with an order of National R.R. Adjustment Board for payment of money)

U.S.C., Title 46, [former] § 38 (Action for penalty for failure to register vessel)

U.S.C., Title 46, § 829 (Action based on non-compliance with an order of Maritime Commission for payment of money)

U.S.C., Title 46, § 941 (Certain actions under Ship Mortgage Act)

U.S.C., Title 46, § 1227 (Actions for damages for violation of certain provisions of the Merchant Marine Act, 1936)

U.S.C., Title 47, § 206 (Actions for certain violations of Communications Act of 1934)

U.S.C., Title 49, § 16(2) [now 11705] (Action based on non-compliance with an order of I.C.C. for payment of money)

1946 Amendment

**Note.** The historic rule in the federal courts has always prohibited piecemeal disposal of litigation and permitted appeals only from final judgments except in those special instances covered by statute. *Hohorst v. Hamburg--American Packet Co.,* 1893, 13 S.Ct. 590, 148 U.S. 262, 37 L.Ed. 443; *Rexford v. Brunswick-Balke-Collender Co.,* 1913, 33 S.Ct. 515, 228 U.S. 339, 57 L.Ed. 864; *Collins v. Miller,* 1920, 40 S.Ct. 347, 252 U.S. 364, 64 L.Ed. 616. Rule 54(b) was originally adopted in view of the wide scope and possible content of the newly created "civil action" in order to avoid the possible injustice of a delay in judgment of a distinctly separate claim to await adjudication of the entire case. It was not designed to overturn the settled federal rule stated above, which, indeed, has more recently been reiterated in *Catlin v. United States,* 1945, 65 S.Ct. 631, 324 U.S. 229, 89 L.Ed. 911. See also *United States v. Florian,* 1941, 61 S.Ct. 713, 312 U.S. 656, 85 L.Ed. 1105; *Reeves v. Beardall,* 1942, 62 S.Ct. 1085, 316 U.S. 283, 86 L.Ed. 1478.

Unfortunately, this was not always understood, and some confusion ensued. Hence situations arose where district courts made a piecemeal disposition of an action and entered what the parties thought amounted to a judgment, although a trial remained to be had on other claims similar or identical with those disposed of. In the interim the parties did not know their ultimate rights, and accordingly took an appeal, thus putting the finality of the partial judgment in question. While most appellate courts have reached a result generally in accord with the intent of the rule, yet there have been divergent precedents and division of views which have served to render the issues more clouded to the parties appellant. It hardly seems a case where multiplicity of precedents will tend to remove the problem from debate. The problem is presented and discussed in the following cases: *Atwater v. North American Coal Corp.,* C.C.A.2, 1940, 111 F.2d 125; *Rosenblum v. Dingfelder,* C.C.A.2, 1940, 111 F.2d 406;

*Audi-Vision, Inc. v. RCA Mfg. Co., Inc.,* C.C.A.2, 1943, 136 F.2d 621; *Zalkind v. Scheinman,* C.C.A.2, 1943, 139 F.2d 895; *Oppenheimer v. F. J. Young & Co., Inc.,* C.C.A.2, 1944, 144 F.2d 387; *Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corp.,* C.C.A.2, 1946, 154 F.2d 814, certiorari denied 1946, 66 S.Ct. 1353, 328 U.S. 859, 90 L.Ed. 1630; *Zarati Steamship Co. v. Park Bridge Corp.,* C.C.A.2, 1946, 154 F.2d 377; *Baltimore and Ohio R. Co. v. United Fuel Gas Co.,* C.C.A.4, 1946, 154 F.2d 545; *Jefferson Electric Co. v. Sola Electric Co.,* C.C.A.7, 1941, 122 F.2d 124; *Leonard v. Socony-Vacuum Oil Co.,* C.C.A.7, 1942, 130 F.2d 535; *Markham v. Kasper,* C.C.A.7, 1945, 152 F.2d 270; *Hanney v. Franklin Fire Ins. Co. of Philadelphia,* C.C.A.9, 1944, 142 F.2d 864; *Toomey v. Toomey,* App.D.C.1945, 149 F.2d 19, 80 U.S.App.D.C. 77.

In view of the difficulty thus disclosed, the Advisory Committee in its two preliminary drafts of proposed amendments attempted to redefine the original rule with particular stress upon the interlocutory nature of partial judgments which did not adjudicate all claims arising out of a single transaction or occurrence. This attempt appeared to meet with almost universal approval from those of the profession commenting upon it, although there were, of course, helpful suggestions for additional changes in language or clarification of detail. But cf. Circuit Judge Frank's dissenting opinion in *Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corp.,* supra, n. 21 of the dissenting opinion. The Committee, however, became convinced on careful study of its own proposals that the seeds of ambiguity still remained, and that it had not completely solved the problem of piecemeal appeals. After extended consideration, it concluded that a retention of the older federal rule was desirable, and that this rule needed only the exercise of a discretionary power to afford a remedy in the infrequent harsh case to provide a simple, definite, workable rule. This is afforded by amended Rule 54(b). It re-establishes an ancient policy with clarity and precision. For the possibility of staying execution where not all claims are disposed of under Rule 54(b), see amended Rule 62(h).

1961 Amendment

This rule permitting appeal, upon the trial court's determination of "no just reason for delay," from a judgment upon one or more but less than all the claims in an action, has generally been given a sympathetic construction by the courts and its validity is settled. *Reeves v. Beardall,* 316 U.S. 283 (1942); *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427 (1956); *Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445 (1956).

A serious difficulty has, however, arisen because the rule speaks of claims but nowhere mentions parties. A line of cases has developed in the circuits consistently holding the rule to be inapplicable to the dismissal, even with the requisite trial court determination, of one or more but less than all defendants jointly charged in an action, i.e. charged with various forms of concerted or related wrongdoing or related liability. See *Mull v. Ackerman,* 279 F.2d 25 (2d Cir. 1960); *Richards v. Smith,* 276 F.2d 652 (5th Cir. 1960); *Hardy v. Bankers Life & Cas. Co.,* 222 F.2d 827 (7th Cir. 1955); *Steiner v. 20th Century-Fox Film Corp.,* 220 F.2d 105 (9th Cir. 1955). For purposes of Rule 54(b) it was arguable that there were as many "claims" as there were parties defendant and that the rule in its present text applied where less than all of the parties were dismissed, cf. *United Artists Corp. v. Masterpiece Productions, Inc.,* 221 F.2d 213, 215 (2d Cir. 1955); *Bowling Machines, Inc. v. First Nat. Bank,* 283 F.2d 39 (1st Cir. 1960); but the Courts of Appeals are now committed to an opposite view.

The danger of hardship through delay of appeal until the whole action is concluded may be at least as serious in the multiple-parties situations as in multiple-claims cases, see *Pabellon v. Grace Line, Inc.,* 191 F.2d 169, 179 (2d Cir. 1951), cert. denied, 342 U.S. 893 (1951), and courts and commentators have urged that Rule 54(b) be changed to take in the former. See *Reagan v. Traders & General Ins. Co.,* 255 F.2d 845 (5th Cir. 1958); *Meadows v. Greyhound Corp.,* 235 F.2d 233 (5th Cir. 1956); *Steiner v. 20th Century-Fox Film Corp.,* supra; 6 Moore's Federal Practice ¶54.34[2] (2d ed. 1953); 3 Barron & Holtzoff, *Federal Practice & Procedure* § 1193.2 (Wright ed. 1958); *Developments in the Law--Multiparty Litigation,* 71 Harv.L.Rev. 874, 981 (1958); Note, 62 Yale L.J. 263, 271 (1953); Ill.Ann.Stat. ch. 110, § 50(2) (Smith-Hurd 1956). The amendment accomplishes this purpose by referring explicitly to parties.

There has been some recent indication that interlocutory appeal under the provisions of 28 U.S.C. § 1292(b), added in 1958, may now be available for the multiple-parties cases here considered. See *Jaftex Corp. v. Randolph Mills, Inc.,* 282 F.2d 508 (2d Cir. 1960). The Rule 54(b) procedure seems preferable for those cases, and § 1292(b) should be held inapplicable to them

A-21

when the rule is enlarged as here proposed. See *Luckenbach Steamship Co., Inc., v. H. Muehlstein & Co., Inc.,* 280 F.2d 755, 757 (2d Cir. 1960); 1 Barron & Holtzoff, supra, § 58.1, p. 321 (Wright ed. 1960).

1987 Amendment

The amendment is technical. No substantive change is intended.

1993 Amendments

**Subdivision (d).** This revision adds paragraph (2) to this subdivision to provide for a frequently recurring form of litigation not initially contemplated by the rules--disputes over the amount of attorneys' fees to be awarded in the large number of actions in which prevailing parties may be entitled to such awards or in which the court must determine the fees to be paid from a common fund. This revision seeks to harmonize and clarify procedures that have been developed through case law and local rules.

**Paragraph (1).** Former subdivision (d), providing for taxation of costs by the clerk, is renumbered as paragraph (1) and revised to exclude applications for attorneys' fees.

**Paragraph (2).** This new paragraph establishes a procedure for presenting claims for attorneys' fees, whether or not denominated as "costs." It applies also to requests for reimbursement of expenses, not taxable as costs, when recoverable under governing law incident to the award of fees. *Cf. West Virginia Univ. Hosp. v. Casey,* 499 U.S. 83 (1991), holding, prior to the Civil Rights Act of 1991, that expert witness fees were not recoverable under 42 U.S.C. § 1988. As noted in subparagraph (A), it does not, however, apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury. Nor, as provided in subparagraph (E), does it apply to awards of fees as sanctions authorized or mandated under these rules or under 28 U.S.C. § 1927.

Subparagraph (B) provides a deadline for motions for attorneys' fees--14 days after final judgment unless the court or a statute specifies some other time. One purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed. Prior law did not prescribe any specific time limit on claims for attorneys' fees. *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445 (1982). In many nonjury cases the court will want to consider attorneys' fee issues immediately after rendering its judgment on the merits of the case. Note that the time for making claims is specifically stated in some legislation, such as the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(B) (30-day filing period).

Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind. It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.

Filing a motion for fees under this subdivision does not affect the finality or the appealability of a judgment, though revised Rule 58 provides a mechanism by which prior to appeal the court can suspend the finality to resolve a motion for fees. If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved. A notice of appeal does not extend the time for filing a fee claim based on the initial judgment, but the court under subdivision (d)(2)(B) may effectively extend the period by permitting claims to be filed after resolution of the appeal. A new period for filing will automatically begin if a new judgment is entered following a reversal or remand by the appellate court or the granting of a motion under Rule 59.

The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate).

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

If directed by the court, the moving party is also required to disclose any fee agreement, including those between attorney and client, between attorneys sharing a fee to be awarded, and between adversaries made in partial settlement of a dispute where the settlement must be implemented by court action as may be required by Rules 23(e) and 23.1 or other like provisions. With respect to the fee arrangements requiring court approval, the court may also by local rule require disclosure immediately after such arrangements are agreed to. *E.g.,* Rule 5 of United States District Court for the Eastern District of New York; *cf. In re "Agent Orange" Product Liability Litigation (MDL 381),* 611 F.Supp. 1452, 1464 (E.D.N.Y.1985).

In the settlement of class actions resulting in a common fund from which fees will be sought, courts frequently have required that claims for fees be presented in advance of hearings to consider approval of the proposed settlement. The rule does not affect this practice, as it permits the court to require submissions of fee claims in advance of entry of judgment.

Subparagraph (C) assures the parties of an opportunity to make an appropriate presentation with respect to issues involving the evaluation of legal services. In some cases, an evidentiary hearing may be needed, but this is not required in every case. The amount of time to be allowed for the preparation of submissions both in support of and in opposition to awards should be tailored to the particular case.

The court is explicitly authorized to make a determination of the liability for fees before receiving submissions by the parties bearing on the amount of an award. This option may be appropriate in actions in which the liability issue is doubtful and the evaluation issues are numerous and complex.

The court may order disclosure of additional information, such as that bearing on prevailing local rates or on the appropriateness of particular services for which compensation is sought.

On rare occasion, the court may determine that discovery under Rules 26-37 would be useful to the parties. *Compare* Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6. *See* Note, *Determining the Reasonableness of Attorneys' Fees--the Discoverability of Billing Records,* 64 *B.U.L.Rev.* 241 (1984). In complex fee disputes, the court may use case management techniques to limit the scope of the dispute or to facilitate the settlement of fee award disputes.

Fee awards should be made in the form of a separate judgment under Rule 58 since such awards are subject to review in the court of appeals. To facilitate review, the paragraph provides that the court set forth its findings and conclusions as under Rule 52(a), though in most cases this explanation could be quite brief.

Subparagraph (D) explicitly authorizes the court to establish procedures facilitating the efficient and fair resolution of fee claims. A local rule, for example, might call for matters to be presented through affidavits, or might provide for issuance of proposed findings by the court, which would be treated as accepted by the parties unless objected to within a specified time. A court might also consider establishing a schedule reflecting customary fees or factors affecting fees within the community, as implicitly suggested by Justice O'Connor in *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 733 (1987) (O'Connor, J., concurring) (how particular markets compensate for contingency). *Cf. Thompson v. Kennickell,* 710 F.Supp. 1 (D.D.C.1989) (use of findings in other cases to promote consistency). The parties, of course, should be permitted to show that in the circumstances of the case such a schedule should not be applied or that different hourly rates would be appropriate.

The rule also explicitly permits, without need for a local rule, the court to refer issues regarding the amount of a fee award in a particular case to a master under Rule 53. The district judge may designate a magistrate judge to act as a master for this purpose or may refer a motion for attorneys' fees to a magistrate judge for proposed findings and recommendations under Rule 72(b). This authorization eliminates any controversy as to whether such references are permitted under Rule 53(b) as "matters of account and of difficult computation of damages" and whether motions for attorneys' fees can be treated as the equivalent of a dispositive pretrial matter that can be referred to a magistrate judge. For consistency and efficiency, all such matters might be referred to the same magistrate judge.

A-23

USCA Case #14-5119     Document #1515159          Filed: 10/02/2014      Page 67 of 71

Subparagraph (E) excludes from this rule the award of fees as sanctions under these rules or under 28 U.S.C. § 1927.

2002 Amendments

Subdivision (d)(2)(C) is amended to delete the requirement that judgment on a motion for attorney fees be set forth in a separate document. This change complements the amendment of Rule 58(a)(1), which deletes the separate document requirement for an order disposing of a motion for attorney fees under Rule 54. These changes are made to support amendment of Rule 4 of the Federal Rules of Appellate Procedure. It continues to be important that a district court make clear its meaning when it intends an order to be the final disposition of a motion for attorney fees.

The requirement in subdivision (d)(2)(B) that a motion for attorney fees be not only filed but also served no later than 14 days after entry of judgment is changed to require filing only, to establish a parallel with Rules 50, 52, and 59. Service continues to be required under Rule 5(a).

2003 Amendments

Rule 54(d)(2)(D) is revised to reflect amendments to Rule 53.

2007 Amendments

The language of Rule 54 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

The words "or class member" have been removed from Rule 54(d)(2)(C) because Rule 23(h)(2) now addresses objections by class members to attorney-fee motions. Rule 54(d)(2)(C) is amended to recognize that Rule 23(h) now controls those aspects of attorney-fee motions in class actions to which it is addressed.

2009 Amendments

Former Rule 54(d)(1) provided that the clerk may tax costs on 1 day's notice. That period was unrealistically short. The new 14-day period provides a better opportunity to prepare and present a response. The former 5-day period to serve a motion to review the clerk's action is extended to 7 days to reflect the change in the Rule 6(a) method for computing periods of less than 11 days.

Fed. Rules Civ. Proc. Rule 54, 28 U.S.C.A., FRCP Rule 54
Amendments received to 7-1-14

End of Document                                     © 2014 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
        Title VII. Judgment

Federal Rules of Civil Procedure Rule 59

Rule 59. New Trial; Altering or Amending a Judgment

Currentness

**(a) In General.**

  **(1)** *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues--and to any party-- as follows:

    **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

    **(B)** after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

  **(2)** *Further Action After a Nonjury Trial.* After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

**(b) Time to File a Motion for a New Trial.** A motion for a new trial must be filed no later than 28 days after the entry of judgment.

**(c) Time to Serve Affidavits.** When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.

**(d) New Trial on the Court's Initiative or for Reasons Not in the Motion.** No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

**(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

**CREDIT(S)**
    (Amended December 27, 1946, effective March 19, 1948; February 28, 1966, effective July 1, 1966; April 27, 1995, effective December 1, 1995; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009.)

## ADVISORY COMMITTEE NOTES

1937 Adoption

This rule represents an amalgamation of the petition for rehearing of [former] Equity Rule 69 (Petition for Rehearing) and the motion for new trial of 28 U.S.C., § 2111, formerly § 391 (New trials; harmless error), made in the light of the experience and provision of the code States. Compare Calif.Code Civ.Proc., Deering, 1937, §§ 656 to 663a, 28 U.S.C., § 2111, formerly § 391 (New trials; harmless error) is thus substantially continued in this rule. U.S.C., Title 28, [former] § 840 (Executions; stay on conditions) is modified insofar as it contains time provisions inconsistent with Subdivision (b). For the effect of the motion for new trial upon the time for taking an appeal see *Morse v. United States,* 1926, 46 S.Ct. 241, 270 U.S. 151, 70 L.Ed. 518; *Aspen Mining and Smelting Co. v. Billings,* 1893, 14 S.Ct. 4, 150 U.S. 31, 37 L.Ed. 986.

For partial new trials which are permissible under Subdivision (a), see *Gasoline Products Co., Inc. v. Champlin Refining Co.,* 1931, 51 S.Ct. 513, 283 U.S. 494, 75 L.Ed. 1188; *Schuerholz v. Roach,* C.C.A.4, 1932, 58 F.2d 32; *Simmons v. Fish,* 1912, 97 N.E. 102, 210 Mass. 563, Ann.Cas.1912D, 588 (sustaining and recommending the practice and citing federal cases and cases in accord from about sixteen States and contra from three States). The procedure in several States provides specifically for partial new trials. Ariz.Rev.Code Ann., Struckmeyer, 1928, § 3852; Calif.Code Civ.Proc., Deering, 1937, §§ 657, 662; Smith-Hurd Ill.Stats., 1937, c. 110, § 216 (Par. (f) ); Md.Ann.Code, Bagby, 1924, Art. 5, §§ 25, 26; Mich.Court Rules Ann., Searl, 1933, Rule 47, § 2; Miss.Sup.Ct.Rule 12, 161 Miss. 903, 905, 1931; N.J.Sup.Ct.Rules 131, 132, 147, 2 N.J.Misc. 1197, 1246-1251, 1255, 1924; 2 N.D.Comp.Laws Ann., 1913, § 7844, as amended by N.D.Laws 1927, ch. 214.

1946 Amendment

**Note. Subdivision (b).** With the time for appeal to a circuit court of appeals reduced in general to 30 days by the proposed amendment of Rule 73(a), the utility of the original "except" clause, which permits a motion for a new trial on the ground of newly discovered evidence to be made before the expiration of the time for appeal, would have been seriously restricted. It was thought advisable, therefore, to take care of this matter in another way. By amendment of Rule 60(b), newly discovered evidence is made the basis for relief from a judgment, and the maximum time limit has been extended to one year. Accordingly the amendment of Rule 59(b) eliminates the "except" clause and its specific treatment of newly discovered evidence as a ground for a motion for new trial. This ground remains, however, as a basis for a motion for new trial served not later than 10 days after the entry of judgment. See also Rule 60(b).

As to the effect of a motion under subdivision (b) upon the running of appeal time, see amended Rule 73(a) and Note.

**Note to Subdivision (e).** This subdivision has been added to care for a situation such as that arising in *Boaz v. Mutual Life Ins. Co. of New York,* C.C.A.8, 1944, 146 F.2d 321, and makes clear that the district court possesses the power asserted in that case to alter or amend a judgment after its entry. The subdivision deals only with alteration or amendment of the original judgment in a case and does not relate to a judgment upon motion as provided in Rule 50(b). As to the effect of a motion under subdivision (e) upon the running of appeal time, see amended Rule 73(a) and Note.

The title of Rule 59 has been expanded to indicate the inclusion of this subdivision.

1966 Amendment

By narrow interpretation of Rule 59(b) and (d), it has been held that the trial court is without power to grant a motion for a new trial, timely served, by an order made more than 10 days after the entry of judgment, based upon a ground not stated in the motion but perceived and relied on by the trial court sua sponte. *Freid v. McGrath,* 133 F.2d 350 (D.C.Cir. 1942); *National Farmers Union Auto. & Cas. Co. v. Wood,* 207 F.2d 659 (10th Cir. 1953); *Bailey v. Slentz,* 189 F.2d 406 (10th Cir. 1951); *Marshall's U.S. Auto Supply, Inc. v. Cashman,* 111 F.2d 140 (10th Cir. 1940), cert. denied, 311 U.S. 667 (1940); but see *Steinberg v. Indemnity Ins. Co.,* 36 F.R.D. 253 (E.D.La.1964).

The result is undesirable. Just as the court has power under Rule 59(d) to grant a new trial of its own initiative within the 10 days, so it should have power, when an effective new trial motion has been made and is pending, to decide it on grounds thought meritorious by the court although not advanced in the motion. The second sentence added by amendment to Rule 59(d) confirms the court's power in the latter situation, with provision that the parties be afforded a hearing before the power is exercised. See 6 *Moore's Federal Practice*, par. 59.09[2] (2d ed. 1953).

In considering whether a given ground has or has not been advanced in the motion made by the party, it should be borne in mind that the particularity called for in stating the grounds for a new trial motion is the same as that required for all motions by Rule 7(b)(1). The latter rule does not require ritualistic detail but rather a fair indication to court and counsel of the substance of the grounds relied on. See *Lebeck v. William A. Jarvis Co.,* 250 F.2d 285 (3d Cir. 1957); *Tsai v. Rosenthal,* 297 F.2d 614 (8th Cir. 1961); *General Motors Corp. v. Perry,* 303 F.2d 544 (7th Cir. 1962); cf. *Grimm v. California Spray-Chemical Corp.,* 264 F.2d 145 (9th Cir. 1959); *Cooper v. Midwest Feed Products Co.,* 271 F.2d 177 (8th Cir. 1959).

1995 Amendments

The only change, other than stylistic, intended by this revision is to add explicit time limits for filing motions for a new trial, motions to alter or amend a judgment, and affidavits opposing a new trial motion. Previously, there was an inconsistency in the wording of Rules 50, 52, and 59 with respect to whether certain post-judgment motions had to be filed, or merely served, during the prescribed period. This inconsistency caused special problems when motions for a new trial were joined with other post-judgment motions. These motions affect the finality of the judgment, a matter often of importance to third persons as well as the parties and the court. The Committee believes that each of these rules should be revised to require filing before end of the 10-day period. Filing is an event that can be determined with certainty from court records. The phrase "no later than" is used--rather than "within"--to include post-judgment motions that sometimes are filed before actual entry of the judgment by the clerk. It should be noted that under Rule 5 the motions when filed are to contain a certificate of service on other parties. It also should be noted that under Rule 6(a) Saturdays, Sundays, and legal holidays are excluded in measuring the 10-day period, but that Bankruptcy Rule 9006(a) excludes intermediate Saturdays, Sundays, and legal holidays only in computing periods less than 8 days.

2007 Amendments

The language of Rule 59 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

2009 Amendments

Former Rules 50, 52, and 59 adopted 10-day periods for their respective post-judgment motions. Rule 6(b) prohibits any expansion of those periods. Experience has proved that in many cases it is not possible to prepare a satisfactory post-judgment motion in 10 days, even under the former rule that excluded intermediate Saturdays, Sundays, and legal holidays. These time periods are particularly sensitive because Appellate Rule 4 integrates the time to appeal with a timely motion under these rules. Rather than introduce the prospect of uncertainty in appeal time by amending Rule 6(b) to permit additional time, the former 10-day periods are expanded to 28 days. Rule 6(b) continues to prohibit expansion of the 28-day period.

Former Rule 59(c) set a 10-day period after being served with a motion for new trial to file opposing affidavits. It also provided that the period could be extended for up to 20 days for good cause or by stipulation. The apparent 20-day limit on extending the time to file opposing affidavits seemed to conflict with the Rule 6(b) authority to extend time without any specific limit. This tension between the two rules may have been inadvertent. It is resolved by deleting the former Rule 59(c) limit. Rule 6(b) governs. The underlying 10-day period was extended to 14 days to reflect the change in the Rule 6(a) method for computing periods of less than 11 days.

A-27

Fed. Rules Civ. Proc. Rule 59, 28 U.S.C.A., FRCP Rule 59

Amendments received to 7-1-14

---

**End of Document**                                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.